In the Interest of JONATHAN H., a Minor, Respondent,

v.

MARGARET H., Natural Mother, Appellant.

No. WD 40551.

Missouri Court of Appeals, Western District.

May 30, 1989.

J. Jeffrey Spainhower, Trenton, for appellant.

R.E. Moulthrop, Bethany, for respondent.

Before NUGENT, P.J., CLARK and LOWENSTEIN, JJ.

NUGENT, Judge.

Margaret H., the mother of Jonathan H., appeals the court's order terminating her parental rights in her son. She argues on appeal that the juvenile officer did not present sufficient evidence to support a finding that her mental condition prevented her from acting knowingly; that no sufficient evidence supported a finding of neglect; that no sufficient evidence supported the finding that additional services would not enable her properly to care for her child; and that the court erred in failing to issue a written finding that termination of her parental rights would serve Jonathan's best interests. We reverse and remand.

Margaret gave birth to Jonathan on January 1, 1986. He suffers from congenital defects including; hydrocephalus, cerebral palsy associated with mental retardation, microencephaly, and estrophia. A surgically implanted shunt serves to relieve pressure from his hydrocephalus. Jonathan's physical problems have resulted in severe delays in his mental and physical development. Although he was over two years old at the time of the termination hearing, he could not walk. He has learned to speak only a few words.

The boy requires extraordinary care. He has twice undergone surgery to replace the shunt in his head and will need further such operations as he grows. He has entered the hospital after suffering seizures from his hydrocephalus. Someone must constantly watch him as his mobility increases. He wears a helmet to prevent injuries to his head. Physical therapy has helped him increase his mobility and develop his muscle control, but he must receive additional training at home to receive the full benefits of the therapy. The physical therapist testified that the foster mother's assistance has enhanced Jonathan's progress.

Jonathan first came into the custody of the Division of Family Services (DFS) in October of 1986, when the juvenile court entered an order of temporary detention. Before that order, Jonathan had twice been hospitalized for nutritional deficiencies. After his first hospitalization in July of 1986, Margaret received training on proper feeding methods. Because she failed to follow those instructions, the boy suffered further weight loss and again entered the hospital. That second hospitalization led the hospital staff to believe that, because of his nutritional deficiencies and his home environment, Jonathan should not be returned to the immediate custody of his mother. The order of temporary detention followed and the child entered foster care.

Margaret entered into a number of written service agreements with the DFS. Those agreements provided that she would work toward attaining a high school equivalency certificate (G.E.D.), would work to improve her home environment; would learn "parenting" skills, and would obtain psychological evaluation and counseling. The agreements initially provided for weekly visits at home with Jonathan. Following an altercation between the mother and her social worker, the DFS reduced the visits to twice monthly for thirty minutes.

The social worker from the DFS testified that Margaret had tried to comply with the terms of her most recent agreements. She regularly exercised her visitation rights; she submitted to a psychological evaluation; she attended G.E.D. classes; and she entered counseling. The social worker testified, however, that many of the areas that initially caused Margaret trouble had been removed from the later agreements. Her brief visits with the boy did not require her to practice extensive "parenting" skills.

A clinical psychologist, Dr. Barry Hughes, testified to the results of Margaret's psychological evaluation. He determined from tests that she suffers from paranoid schizophrenia and borderline mental retardation. Her low intelligence diminishes her ability to overcome her psychological symptoms. The psychologist testified that her mental condition would not improve but would deteriorate with age. He concluded that Margaret is unable to understand Jonathan's needs or to follow instructions for his care. Dr. Hughes believed that medication would not improve Margaret's ability to take care of a child.

Ada Silvey operates the Lifelong Learning Center. As Margaret's counselor, she has been able to help Margaret better understand her own and her son's problems. Ms. Silvey testified to Margaret's hard work toward improving her psychological condition, but she did not expect that Margaret would significantly progress further. Ms. Silvey believed that, because of her mental problems, including her inability to distinguish fact from fancy, Margaret could not properly care for a child. Although Ms. Silvey believed that continued visitation from a schizophrenic mother might create emotional harm for a normally developing child, she did not think that Margaret's supervised visits would harm a child with Jonathan's disabilities. Without doubt Margaret benefitted from visiting her son.

All who testified agreed that Margaret sincerely loves her son. Margaret herself has investigated the possibility of services in St. Joseph that would provide her a structured living environment. She has also considered the availability of facilities there for handicapped children. She testified that even if the court determined that she should not regain custody of her son, she wants to continue to visit him.

The juvenile court found that Jonathan had previously been adjudicated abused and neglected on February 17, 1987; that he requires special care and attention; that Margaret cannot understand the nature of the care that Jonathan requires; that she has failed to provide the child with necessary care and that her failure amounts to neglect; that Margaret suffers from a debilitating mental condition that will not improve; and that further services would not alter her inability to care for her child. The findings did not, however, mention the child's best interests. The court entered an order terminating Margaret's parental rights, and she appeals, asserting that insufficient evidence supported the court's findings. She also claims that the court erred in failing to enter a written finding that termination of parental rights would serve Jonathan's best interests. The final point warrants reversal.

We first consider the challenge to the sufficiency of the evidence. The juvenile court may terminate the rights of a parent to a child if it finds that the termination is in the best interests of the child and when clear, cogent and convincing evidence exists to support the court's finding of one or more of the grounds set out in § 211.447.2 and § 211.447.1.[1] That section recites among other grounds a finding that (1) "the child has been adjudicated to have been abused or neglected"; (2) the parent suffers from a mental condition that "renders the parent unable to knowingly provide the child with necessary care, custody and control"; and (3) that the mental condition is permanent or that no reasonable likelihood of reversal exists. § 211.447.2(2)(a).

Here the record shows a February 17, 1987, adjudication of neglect that followed two occasions when Jonathan entered the hospital suffering from near-fatal malnourishment. Furthermore, Dr. Hughes' expert testimony established that Margaret could not understand or follow the instructions for the extensive care that Jonathan requires. Both Dr. Hughes and Margaret's counselor, Ms. Silvey, testified that Margaret could not comprehend the nature of her son's disabilities. That evidence supports a finding that Margaret could not act knowingly to provide Jonathan with the care that he requires. *See In re C.L.M.,*

1. All sectional references are to Revised Statutes of Missouri, 1986.

625 S.W.2d 613, 616 (Mo.1981) (en banc). Finally, Dr. Hughes testified to the permanent nature of Margaret's mental condition. Not only is she unlikely to improve, but her probable prognosis calls for her mental state to deteriorate as she ages. The evidence provides grounds for termination under § 211.447.2(2)(a), therefore, we need not further consider the sufficiency of the evidence to support the other grounds. *See In re Kevin,* 685 S.W.2d 938, 941 (Mo.App.1985).

█ Nevertheless, we must reverse the judgment because of the trial court's failure to issue a written finding regarding the best interests of the child. Since the statutorily created power to terminate parental rights entails a drastic intrusion into the sacred parent-child relationship, Missouri courts have consistently demanded strict compliance with the statutes creating that power. *See e.g. In re S.P.W.,* 707 S.W.2d 814, 820 (Mo.App.1986); *In re W.F.J.,* 648 S.W.2d 210, 214 (Mo.App.1983); *In re C.P.B.,* 641 S.W.2d 456, 459 (Mo.App.1982). Section 211.477.5 provides that the order terminating parental rights "shall recite" the jurisdictional facts, factual findings as to the grounds for termination and that the termination will serve the child's best interests. Failure to comply with that requirement, provides grounds for reversal. *In re D.E.J.,* 609 S.W.2d 472, 474 (Mo.App.1980).

In failing to issue a finding about the best interests of Jonathan, the court failed to comply with § 211.477.5. In the absence of a specific finding by the trial court that termination of parental rights would serve Jonathan's best interests, we cannot infer that finding from this record.

Accordingly, we reverse the judgment of the trial court and remand with directions to enter findings regarding Jonathan's best interests. In so doing, the court may wish to consider the alternatives to termination that § 211.477.4(2) provides.

All concur.