**In the Interest of D.L. and L.L., Juvenile Officer, Respondent,**

v.

**D.L. (Natural Father), Appellant.**

**No. WD 43044.**

Missouri Court of Appeals,
Western District.

Oct. 30, 1990.

Mid–Missouri Legal Services, Edward Berg, Columbia, for appellant.

Kenneth D. Kyser, Moberly, for respondent.

Gary G. Sprick, Fayette, Guardian ad Litem.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

BERREY, Presiding Judge.

Appellant (father) appeals from an order terminating his parental rights to his two sons, D.L. and L.L. Father presents two points on appeal: (1) the trial court erred in the termination of his parental rights as its decision was against the weight of the evidence and not supported by substantial evidence; and (2) the trial court erred in ordering termination as the petition for termination did not conform to the requirements of the Missouri Uniform Child Custody Jurisdiction Act. Affirmed.

Appellant and his wife, R.L., are the natural parents of two children, L.L., born June 24, 1984, and D.L., born November 27, 1985. In 1985 a Division of Family Services' (DFS) employee, Janice Hall, investigating a child abuse and neglect report, found their home in a generally dirty condition. A service agreement was entered into in May, 1985. On February 19, 1986, petitions were filed with the juvenile court of Howard County concerning the welfare of the children and the court subsequently issued a detention order placing the children in the temporary custody of DFS.

On July 18, 1986, a hearing was held upon the petition. The allegations contained in the petition were admitted in open court. These admitted allegations included the fact that five hot line reports had been made and each substantiated physical neglect due to the dirty and cluttered interior of the home. The home was found to be a health hazard with garbage and trash covering the majority of the house, along with dirty dishes, empty cans and clothing.

Janice Hall worked closely with the family. Three written service agreements were entered into by the father and mother. These agreements provided for visitation and for counseling. Janice Hall testified that although there were periods when things would get better, "that would not last for a long period of time and they would relapse to the old ways."

By November, 1986, conditions had improved enough for the children to be allowed to return to the parental home. A new "written service agreement" was entered into, dated November 19, 1986. In this agreement the father and mother agreed to keep the house clean,' keep their appointments for counseling and for the children's medical care and look for employment. The father did not enthusiastically pursue his opportunities to learn parenting skills. He felt such chores were "woman's" work.

Janice Hall left the DFS in February, 1987, and was eventually replaced by Ste-

ven Petrechko. During the time he worked on the case neither the father or the mother would cooperate with him. They did not comply with the written service agreements. Steven Petrechko testified that appellant was very clear that he was not to work on conditions outside the home. These conditions included broken glass, a corroding car battery, rotting food, flies and maggots. Inside conditions included clothing strewn all over the floor, old and rotting food, soaked pads and a stove top covered with grease. Petrechko tried to get father interested in vocational rehabilitation but he refused. Neither parent was able to find work.

Ann Stout, a social worker from DFS, worked with the family from September, 1987, until the termination hearing. The children were once again removed from the parental home in September, 1987, as a result of the findings of a hot line investigation. Although the children were returned on November 20, 1987, they were once again removed from their parents on December 14, 1987, due to home conditions.

The children were placed with appellant's brother where they remained until September, 1988. Eventually the children were placed in Booneville, Missouri. While they were in Booneville, appellant visited with the children only five times and had not seen them since March, 1989. He has not requested to see them nor did he acknowledge them on their birthdays or at Christmas. Father did not comply with the plan devised for the payment of child support.

On January 18, 1990, a termination hearing was held. The natural mother of the children consented to the termination of her parental rights. She testified against appellant at that hearing stating that appellant had very little interest in the children and that he had sexually abused the children.

The trial court found "clear, cogent, and convincing evidence introduced to support the termination" of appellant's rights both under § 211.447.2(2), RSMo 1986 and § 211.447.2(3). Termination was therefore ordered. Father appeals the termination of his parental rights.

■ Appellant's first point on appeal is that the trial court erred in terminating his parental rights under § 211.447.2(3), RSMo 1986, because conditions had been rectified and that termination was therefore against the weight of the evidence and not supported by the evidence. He also challenges termination of his rights under § 211.447.2(2), RSMo 1986, as not supported by and against the weight of the evidence as to his continuing neglect of the children. He complains that the state failed to provide reasonable services to help him maintain a relationship with his children.

The statute that governs this point states:

2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:

. . . .

(2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

. . . .

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for his physical, mental, or emotional health and development;

(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future,

or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

. . . .

§ 211.447.2(2), RSMo 1986; § 211.447.2(3), RSMo 1986.

■ In any termination of parental rights, the primary concern must be the best interests of the child. *In Interest of M.E.W.*, 729 S.W.2d 194 (Mo. banc 1987). The state must prove its case based upon clear, cogent and convincing evidence. *D.G.N. v. S.M.*, 691 S.W.2d 909, 912 (Mo. banc 1985). The decree will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Id.* Review is done in the light that is most favorable to the order of the trial court. *In Interest of M.L.W.*, 788 S.W.2d 759, 762 (Mo.App.1990).

Appellant argues that his parental rights were improperly terminated as the court should have found from the evidence that he had rectified those conditions which caused the children to be adjudicated as wards of the court. He focuses on the time after he and his wife were separated, arguing that after June, 1988, there was no evidence that the home in which he lived was a hazard to the children. Although this is certainly relevant to the court's inquiry it is not conclusive. Appellant is focusing on too narrow a time frame. "Although no one can predict the future with total accuracy, patterns in the past provide vital values to the present and future." *In Interest of M.L.W., supra,* 788 S.W.2d at .762.

In the instant case, appellants' actions make it quite clear that the conditions which led to the taking of the children had not been rectified. Appellant failed to cooperate with the various social workers and counselors who would have aided him in acquiring better parental and housekeeping skills. No social service plan entered into between appellant and the DFS was ever successfully completed by appellant. His view of housework was that it was "woman's work." Time after time the house was found to be in a shockingly unsanitary state.

■ Appellant's lack of interest in the children while he was living with their mother as well as his disinclination to help the mother care for them is further substantiated by the neglect he has shown for them after his separation from the mother. Appellant did not remain in contact with the children. He did not support them. Appellant cannot shift the blame for his actions to the DFS. The record clearly reflects that reasonable services were provided to appellant by the agency but that appellant failed to take advantage of these services. It is up to parents to make a commitment for change in order to rectify those conditions preventing the return of their children. *In the Interest of T.S.,* 797 S.W.2d 837, 842 (W.D.Mo.App.1990). There is an affirmative duty on the part of the parent to show that the parent is committed to the children by showing an interest in them. The parent is required to support, communicate and visit with the children. *In Interest of M.L.W., supra,* 788 S.W.2d at 763. Appellant's Point I is denied.

■ Appellant contends in Point II that the trial court erred in terminating his parental rights because the proceeding was flawed in that the petition failed to conform to the requirements of the Missouri Uniform Child Custody Jurisdiction Act, § 452.440 et seq., RSMo 1986, because that Act requires information on the names of persons who claim custody or visitation

rights in the child and no such information was provided in the instant case. Section 211.452, RSMo 1986, states very specifically what the contents of a petition for termination should be. The petition in the instant case satisfies these requirements. Nowhere does appellant cite authority for the proposition that the petition must conform to the UCCJA. "The UCCJA is designed to 'assure the litigation considering the custody of a child take[s] place ordinarily in the state with which the child and his family have the closest connection....'" *In re T.C.M.*, 651 S.W.2d 525, 527 (Mo.App.1983), quoting 9 Uniform Laws Annotated, Master Ed., § 1(a)(3), p. 117. Appellant does not show how the UCCJA would apply to the facts and circumstances in the instant case. Appellant's Point II is denied.

The judgment of the trial court is affirmed.

All concur.