In the Interest of C.B.C., a Minor.

John JOHNSON, Chief Juvenile Officer, Respondent,

v.

Gaylynn A. SISK, Appellant.

No. WD 43806.

Missouri Court of Appeals, Western District.

May 28, 1991.

Motion for Rehearing and/or Transfer Denied June 27, 1991.

Candace J. Barnes, St. Joseph, for appellant.

James A. Nadolski, St. Joseph, for respondent.

Before LOWENSTEIN, P.J., and TURNAGE and FENNER, JJ.

FENNER, Judge.

Appellant, Gaylynn A. Sisk, appeals from an order of the trial court terminating her parental rights pursuant to § 211.447, RSMo 1986[1]. The child, C.B.C., a male, was born March 26, 1986. The natural father denied paternity and relinquished any rights he may have had as a parent to C.B.C.

On July 20, 1987, a Rhonda Felt contacted the Missouri Division of Family Services (DFS) with information that C.B.C. had been left in her care by appellant, but that she could not care for him for a lengthy period of time. Apparently, appellant left C.B.C. with Rhonda Felt during the time appellant chose to serve a four-month jail sentence following a four month probation period given in a DWI sentencing.

The following day, July 21, 1987, two DFS workers, one of whom was Mary Bembrick who subsequently became appellant's caseworker, visited appellant in jail. At that time, appellant agreed that foster care was appropriate for C.B.C. while she was in jail because there were no family members to care for him.

On July 28, 1987, C.B.C. was made a ward of the court and committed to the custody of DFS for placement in foster care. Appellant was ordered to undergo psychiatric and psychological evaluation.

Appellant was released from jail in October, 1987, and visited C.B.C. on October 29, 1987. During her incarceration, appellant had no visits with C.B.C.

On December 3, 1987, appellant and DFS entered into a Protective Services Contract whereby appellant and DFS both agreed to meet certain conditions to enable appellant to regain custody of C.B.C. This particular contract was to extend for a period of 90 days. The record indicates that this service contract was the only one entered, although Mary Bembrick testified that an attempt had been made to negotiate a new contract between March, 1988 and July, 1988.

At the request of Mary Bembrick, appellant made several attempts to obtain alcohol treatment for her problems, all of which were unsuccessful. On May 2, 1988, appellant entered a 30 day chemical abuse/chemical dependency program at Sunrise Center in St. Joseph, Missouri, at the request of DFS. She left the program nine days later, May 11, 1988, without completing the program.

Appellant presented herself at the Booth Center/Salvation Army Center of St. Joseph, which is a substance abuse center, in August, 1988. She left voluntarily on the second day against the advice of the staff. Within a month, appellant again presented herself at the Booth Center, but again stayed only a few days before she left the program.

Also, in August, 1988, DFS made arrangements for appellant to enter the Eppley Treatment Facility in Maryville, Missouri, a facility for the treatment of substance abuse. She was admitted on August 28, 1988. Based upon the results of a psychiatric consultation with Sarz Maxwell, M.D, it was established that appellant was not suitable for treatment at this facility and she was advised that she needed to be

1. All statutory references are to RSMo 1986, unless otherwise specifically stated.

transferred to the behavioral medicine unit for inpatient psychiatric treatment. Appellant refused to be transferred and was therefore discharged from the Eppley Facility.

On June 30, 1989, appellant was brought to Sunrise Center by the St. Joseph Police on a 96 hour emergency hold related to a chemical dependency problem. However, she was there for a very short time. She left the premises after the police officers were gone.

Appellant has also submitted to various psychological evaluations following the time DFS became involved and intervened on behalf of C.B.C. These evaluations took place April 24, 1987; September 1, 1988; June 30, 1989; December 6, 1989; and December 15, 1989.

Scott Jones, D.O., a psychiatrist, first examined appellant on April 24, 1987, while he was employed by Family Guidance in St. Joseph. At that time, he diagnosed an alcohol abuse problem and a paranoid personality disorder. He testified that he felt appellant would have been unable to consistently provide adequate parenting for a small child. Dr. Jones also testified that the prognosis for treatment was poor because persons suffering from personality disorders are resistent to treatment.

Dr. Jones examined appellant a second time on December 6, 1989, at the request of DFS in connection with the proceeding to terminate parental rights. It was his opinion that appellant's condition had deteriorated and that her thought processes were more scattered. He attributed the deterioration to appellant's substance abuse problem. Dr. Jones added the diagnosis of a delusional disorder which he described as paranoid beliefs with an otherwise fairly clear ability to deal with reality. He also changed the alcohol abuse diagnosis to alcohol dependency. Dr. Jones felt appellant's prognosis for treatment was very poor because of her resistance to treatment and her psychiatric and chemical dependency problems prevented her from providing consistent care for a small child.

David G. Windsor, M.D., a psychiatrist, first evaluated appellant on June 30, 1989, in connection with the termination of parental rights proceeding. However, he felt that the examination may have been contaminated as appellant smelled rather strongly of alcohol and admitted she had some beer prior to the examination.

The second evaluation by Dr. Windsor took place on December 15, 1989, and followed the standard psychiatric format. According to Dr. Windsor, appellant seemed much better than the first time he examined her. Her contact with reality seemed fine to Dr. Windsor. It was his opinion that appellant suffered a bipolar manic disorder with a secondary diagnosis of substance abuse, such that her ability to take care of herself was marginal and that her ability to care for a small child would be "rather poor." Dr. Windsor felt that the bipolar disorder was permanent but treatable and noted three obstacles to successful treatment for appellant, to wit: limited resources, resistance to treatment and alcohol use.

Finally, Sarz Maxwell, M.D., a psychiatrist, was requested by Eppley Center to perform an evaluation on appellant, which was done on September 1, 1988. Dr. Maxwell's diagnosis was bipolar disorder, manic state. She did not focus on the chemical dependency angle as it was her opinion that appellant was clearly chemically dependent, but on appellant's mental state. Specifically, Dr. Maxwell focused her evaluation on the questions of whether appellant had a psychiatric disorder other than chemical dependency and if so, is that psychiatric disorder interfering with treatment of her chemical dependency. It was Dr. Maxwell's belief that bipolar disorder is a permanent, chronic condition and without treatment, irreversible. Further, in Dr. Maxwell's opinion, without treatment appellant would not be able to take care of a child.

The specific episodes of visitation which occurred between appellant and her son, C.B.C., since the child has been under the supervision of DFS need not be specifically detailed. Suffice it to say that the episodes of visitation can best be described as sporadic.

All except two of the visits occurred at the DFS office. Many visits were missed. Appellant explained that a physical problem with her back prevented her from attending regular visitations. Many visits were missed where appellant failed to notify DFS of her need to cancel or her reasons for not attending.

The Petition for Termination of Parental Rights was filed on May 4, 1989, alleging as the basis, appellant's mental condition, her chemical dependency and the length of time the child had been under the supervision of the juvenile court. On July 25, 1990, the trial court entered its findings of fact and conclusions of law terminating appellant's parental rights to C.B.C.

Five points are presented on appeal. Point one alleges that the judgment terminating parental rights should be reversed and remanded because the trial court failed to make a finding that DFS made reasonable efforts to 1) eliminate the need for removal of C.B.C. and to 2) make it possible for C.B.C. to be reunited with appellant. Appellant alleges that the Adoption Assistance and Child Welfare Act, 42 U.S.C. § 670, et seq., requires states to make reasonable efforts to return the child to his family home pursuant to § 671 and requires preparation of written case plans in each proceeding detailing a plan of services to facilitate the reunification of the family pursuant to § 675.

Appellant further argues that § 211.447.2(3) requires the trial court to make findings, including the success or failure of the efforts of DFS to aid the parent on a continuing basis in adjusting the parent's circumstances or conduct to provide a proper home for the child, but the trial court did not make such a finding addressing the efforts of DFS to help appellant.

■ Appellant's arguments on these matters are mistaken. First of all, the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620–628 and 670–677, which appellant references, makes federal financial participation available to the states with qualifying adoption assistance programs. This act details what actions must be taken by the state in order to be entitled to receive federal financial participation in the form of adoption subsidy payments. See, *J.P. v. Mo. Dept. of Social Services*, 752 S.W.2d 847, 849 (Mo.App. 1988). Contrary to appellant's assertion, this federal act has no applicability to individual actions.

■ Furthermore, there is no requirement pursuant to § 211.447.2(3) that the trial court make specific findings addressing the efforts undertaken by DFS to help appellant. Rather, the trial court has the duty to make findings as to the success or failure of the efforts of DFS based upon the evidence before it regarding those efforts. The trial court found that appellant had not worked with her caseworker on a plan for reunification, nor did she cooperate or comply with the directives of the juvenile court. The record herein reflects a wealth of evidence to indicate that DFS actively pursued an effort to reunite C.B.C. with appellant. However, appellant, without explanation, was absent on a number of occasions where visitation had been scheduled by DFS. She was adamant in her refusal to accept her chemical dependency problem and to take advantage of the facilities from which she could receive help where such were suggested by DFS. A review of the record indicates that because appellant consistently refused or failed to take advantage of the opportunities made available to her by DFS, the efforts of DFS failed. Point one is denied.

■ In point two, appellant argues that the judgment terminating her parental rights should be reversed because DFS did not make reasonable, diligent and continuing efforts to assist her in providing a proper home for C.B.C., nor did DFS provide her with continuing services reasonably calculated to assist her in providing a proper home for C.B.C.

As stated previously, in point one, appellant was presented with opportunities made available to her by DFS to help her rectify her problems. Appellant, however, failed to take advantage of these opportunities, consistently refusing to recognize she has

problems. Where a parent fails to take advantage of services presented to her, she cannot shift the blame for her inaction to DFS. *D.L. v. D.L.*, 798 S.W.2d 220, 223 (Mo.App.1990). It is up to the parent to make a commitment for change in order to rectify the conditions preventing return of the child. *Id.* Appellant's second point is denied.

■ In point three, appellant alleges that the trial court's finding that termination was in the best interest of C.B.C. was not supported by substantial evidence as required by § 211.447.2, RSMo 1986.

Without a doubt, the paramount concern in any termination of parental rights action, must be the best interests of the child. *In Interest of M.E.W.*, 729 S.W.2d 194 (Mo. banc 1987).

Ample evidence was presented to show that termination would be in the best interests of C.B.C. Evidence was presented that appellant has, at best, marginal ability to care for herself due to her psychiatric disorder and her chemical dependency. All three experts who evaluated appellant testified unequivocally that she would be unable to care for a small child. There was also testimony to indicate that appellant's future prognosis was poor due to her resistance to treatment and her refusal to recognize her problems.

C.B.C. has been under the supervision of the juvenile court since July 28, 1987. Since that time he has remained in foster care with the same family. The foster parents have expressed an interest in adopting him. There is evidence that there is no bonding between C.B.C. and appellant and that C.B.C. does not comprehend that appellant is his natural mother, even though appellant had demanded he call her "Mom."

Although there are no guarantees that C.B.C. will be adopted, there is no question but that a continuation of the parent child relationship would diminish his prospects for early integration into a stable and permanent family situation. The evidence clearly indicates that the trial court properly found that termination was in the best interests of C.B.C. Point three is denied.

■ In point four, appellant argues that the trial court erred in failing to make complete findings of fact as required by § 211.447.2(2) and (3) and § 211.447.3.

With regard to § 211.447.2(2) and (3), the trial court did indicate that there existed clear, cogent and convincing evidence to support the termination of parental rights pursuant to both subdivisions (2) and (3).

The pertinent portions of the statute state:

2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or in adoption cases, by a prospective parent, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:

\*　　\*　　\*　　\*　　\*　　\*

(2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being

committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for his physical, mental, or emotional health and development;

(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control.

Although the findings do not reflect that the trial court considered and made findings as to all four of the conditions listed under (2)(a) through (d), they do reflect consideration of and findings on the conditions listed under (3)(a) through (d). As is readily apparent from a reading of § 211.447.2, the grounds listed in either (2) or (3) are sufficient to terminate parental rights.

Regarding § 211.447.3, appellant likewise argues that the trial court did not make findings in accordance with subsection 3. Subsection 3 provides:

3. When considering whether to terminate the parent-child relationship pursuant to subdivision (1), (2) or (3) of subsection 2 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case: .....

The subsection goes on to list seven factors for the court to consider. Herein, the trial court made findings as to the factors appropriate and applicable to this case, those being:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

\* \* \* \* \* \*

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

\* \* \* \* \* \*

No error can be found for any reason alleged by appellant in point four. The point is denied.

In her final point, appellant argues that the trial court failed to make sufficient findings of fact and/or clear, cogent and convincing evidence was not adduced that one or more of the statutory bases for termination of parental rights existed. It is unnecessary to reiterate what has been previously stated. It is sufficient to refer to point four which discusses the sufficien-

cy of the findings made by the trial court. It is also unnecessary to discuss the sufficiency of the evidence. A review of the facts as previously set forth leave no doubt that the trial court acted properly and reached a result which is in the best interest of C.B.C.

The judgment is affirmed.

All concur.