**In the Interest of W.S.M., a minor.**

**JUVENILE OFFICER, Respondent,**

v.

**W.M., Natural Father and D.M., Natural Mother, Appellants.**

**No. WD 45774.**

Missouri Court of Appeals,
Western District.

Jan. 19, 1993.

Gabriel A. Domjan, Independence, for appellants.

Dane C. Miller and Lance A. Riddle, Warrensburg, for respondent.

Before BRECKENRIDGE, P.J., and SHANGLER and SPINDEN, JJ.

SPINDEN, Judge.

D.M., mother, and W.M., father, appeal the trial court's termination of their parental rights to their son, W.S.M. They contend that clear, cogent and convincing evidence did not support termination. They also complain that the court's order did not recite facts supporting the grounds for termination or that termination was in W.S.M.'s best interest, and that the trial judge erroneously factored into his determination the foster parents' bonding to W.S.M. and their willingness to adopt him. D.M. and W.M. also assert that the trial judge should have disqualified himself from presiding over the termination hearing and that they received ineffective assistance of counsel.[1] We affirm the trial court's determination that grounds existed to terminate D.M.'s and W.M.'s parental rights pursuant to § 211.447.2(3), RSMo Supp.1991, but we remand for the court to enter findings regarding W.S.M.'s best interests.

W.S.M. was born on February 20, 1988. He was 15 months old when the Johnson County Juvenile Office filed a petition asking the trial court to take jurisdiction of him. The petition alleged that W.S.M. needed care and treatment and the house provided by W.S.M.'s parents "was filthy with animal feces; had rotting food on kitchen counters and in the refrigerator; had trash and dirty clothing piled within that home; and that these conditions continued to exist despite previous efforts by the Division of Family Services, Juvenile Officer, and Parent Aid Program of Johnson County, Missouri, to assist." The petition also alleged that D.M. failed to obtain proper medical attention for W.S.M.

On May 10, 1989, the trial court took jurisdiction of W.S.M. and found that his removal from the home was necessary because the parents failed to provide needed medical attention, the parental home was not suitable, and the parents failed to cooperate with Division of Family Services (DFS). The court put W.S.M. in the custody of DFS for placement in foster care.

On July 26, 1991, the juvenile office filed a petition to terminate the parental rights of D.M. and W.M. The petition stated that termination was being sought pursuant to § 211.447.2(3) and alleged that the child had been under the jurisdiction of the juvenile court for a period of one year and that conditions of a potentially harmful nature continued to exist and that there was little likelihood that those conditions would be remedied at an early date so that the child could be returned to his parents in the near future.

On November 26, 1991, the court held a termination hearing. On December 12, 1991, the court ruled that the allegations contained in the termination petition were

---

1. Within the argument portion of their briefs, D.M. and W.M. raise alleged errors which were not contained in their points relied on. We address our decision only to those errors alleged in the points relied on. See *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978).

true and terminated the parental rights of D.M. and W.M. pursuant to § 211.447.

■■■ This court should affirm this decision to terminate parental rights if the record contains substantial evidence supporting the decision and is not against the weight of the evidence, and the trial court has properly declared and applied the law. In reviewing the trial court's decision, we view the evidence and its reasonable inferences in a light most favorable to the decision. *In Interest of Y.M.H.*, 817 S.W.2d 279, 282 (Mo.App.1991). We must be extremely cautious in considering the setting aside of a judgment on the ground that it is against the weight of the evidence. We should do so only if we have a firm belief that the judgment is wrong. *In Interest of G.C.P.*, 680 S.W.2d 429, 430 (Mo.App.1984).

■■ An order terminating parental rights must be supported by clear, cogent and convincing evidence that one of the grounds for termination under § 211.447 exists and that termination of parental rights is in the child's best interest. *In Interest of Y.M.H.*, 817 S.W.2d at 282. "Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In Interest of J.M.*, 815 S.W.2d 97, 101 (Mo.App.1991).

The parents in this case contend that the evidence does not support the trial court's order. They argue that the evidence established that the problems D.M. and W.M. were having when the court removed W.S.M. from their home—unsanitary, substandard housing—had improved by the time of the termination hearing, so the trial court had no basis for concluding under § 211.447.2(3) that the problems were continuing.

Continuation of the problems which caused the court to exercise jurisdiction is but one of the conditions on which termination of parental rights can be based under § 211.447.2(3). That statute authorizes termination if:

The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

■■ The trial court heard clear, cogent and convincing evidence that "conditions of a potentially harmful nature continue to exist." The trial court found:

[T]he biological father continues to encounter employment problems and legal problems that prevent stability from existing in the home[.] [T]he mother's borderline intellectual functioning and dependence upon others cannot be overcome in the foreseeable future[.]

. . . .

. . . The biological mother has failed to comply with the terms of the numerous Written Service Agreements prepared over the extensive period of time the minor child has been in Division of Family Services custody. Psychological evaluation of the biological mother reveal [sic] that she has a significant psychological problem which renders proper care and support for the juvenile by her impossible.

. . . The biological father has further failed to comply with the terms of the numerous Written Service Agreements prepared over the period of time this case has been pending. Psychological evaluation of the biological father reveals that he has a significant psychological problem which renders proper care and support for the juvenile by the father highly unlikely.

Supporting these findings was evidence that a psychologist's testing had established that D.M. could function as a parent only with "considerable supervision" because of deficiencies in her intelligence and

the personality disorders she suffered. His testing established that W.M. suffered an anti-social personality disorder and was a drug abuser. The tests indicated that W.M. was "a defensive and invasive individual who's lacking in insight, and is likely to be quite resistant to psychotherapeutic intervention." The court heard evidence that D.M. and W.M. did not abide by their agreements with DFS to provide suitable housing for W.S.M. and to obtain counseling for W.M.'s alcohol abuse and to help their parenting skills. Counselors testified that additional services would not likely rehabilitate D.M.'s and W.M.'s lack of parenting skills.

We conclude that the trial court had a sufficient basis for concluding that these problems were potentially harmful to W.S.M. and these problems, which had existed for some time, continued to exist in November 1991 and would not likely subside. We conclude that clear, cogent and convincing evidence supported the trial court's order terminating parental rights pursuant to § 211.447.2(3).

D.M. and W.M. base much of their contention of error on the testimony of a Henry County family counselor who had been counseling the couple in the months before the termination hearing.[2] He described their progress as "up and down," but he added that they attended counseling sessions regularly and he had seen "some improvement" in their parenting skills. He described their interaction with their other child, born after W.S.M. was removed from their home, as normal. He had not seen W.S.M., and he acknowledged that adding another child to the home could be stressful, a problem in light of W.M.'s alcohol abuse.

■ This testimony does not persuade us that the trial court's order was contrary to the weight of the evidence. The clear, cogent and convincing standard can be met even when the trial court hears evidence contrary to its findings, and it does not apply to the trial court's finding that termination is in the child's best interest. *T.S. v. P.S.*, 797 S.W.2d 837, 840 (Mo.App.1990); *In Interest of J.D.B.*, 813 S.W.2d 341, 344 (Mo.App.1991). We give deference to the court's ability to determine the witnesses' credibility and to choose between conflicting evidence. *T.S. v. P.S.*, 797 S.W.2d at 840.

■ D.M. and W.M. also contend that the trial court erred in terminating their parental rights because the court failed to recite the factual findings supporting the grounds for termination and to find the best interests of the child were served by terminating parental rights. Section 211.477.5, RSMo 1986, provides, "Orders of the court issued pursuant to sections 211.442 to 211.487 *shall recite* the jurisdictional facts, factual findings on the existence of grounds for termination and that the best interests of the child are served by the disposition stated in the order."[3]

We agree that the trial court's failure to make these specific findings was reversible error. As this court stated in *D.E.J. v. G.H.B.*, 609 S.W.2d 472, 474 (Mo.App.1980), "severance of the parent-child relationship by act of law is an exercise of awesome power and demands strict and literal compliance with the statutory authority from which it is derived.... Section [211.477.5][4] is more than idle, statutory rhetoric. It means what it says and compliance is obligatory." Failure to comply with § 211.477.5 is grounds for reversal. *Jonathan H. v. Margaret H.*, 771 S.W.2d 111, 114 (Mo.App. 1989).

The trial court's order terminating parental rights did not include a finding concerning the best interests of W.S.M. "In the absence of a specific finding by the trial court that termination of parental rights

---

**2.** D.M. and W.M. had moved to Henry County after the Johnson County Circuit Court had taken jurisdiction of W.S.M. The Johnson County DFS office maintained primary responsibility for W.S.M.'s case, but maintained contact with D.M. and W.M. through the Henry County DFS office.

**3.** We added the emphasis.

**4.** The court in this case construed § 211.482, RSMo 1978, which is now § 211.477.5.

would serve [W.S.M.'s] best interests, we cannot infer that finding from this record." *Id.*

■ The juvenile officer argues that because the petition for termination specifically alleged that termination. of parental rights would be "in the child's best interest" and because the court found that the allegations in the petition were "true and correct and proven by the competent evidence presented," the court made the finding that termination was in W.S.M.'s best interest by reference to the petition. We disagree. A declaration by the court that the allegations of the petition were true is insufficient to satisfy the standard of strict compliance with § 211.477.5 which is required when terminating parental rights. *In Interest of R.S.P.*, 619 S.W.2d 863, 864 (Mo.App.1981).

We conclude, however, that the court satisfied § 211.477.5's requirement of a recitation of factual findings regarding the grounds for termination. Pursuant to §§ 211.447.2(3) and 211.447.3, the court made findings as to the relevant factors to be considered when terminating parental rights. These findings supported the determination that grounds existed to terminate parental rights pursuant to § 211.447.-2(3).

■ Next, D.M. and W.M. contend that the trial court erred in considering evidence regarding the bonding of the foster parents to W.S.M. and the willingness of the foster parents to adopt W.S.M. We disagree. In determining a child's best interest, the court may consider the child's psychological ties to foster parents, his progress while in foster care, the harm caused by separating him from his foster parents, the foster parents' willingness to adopt him, and whether continuation of the parent-child relationship would diminish the prospects for early integration into a stable and permanent home. *See In the Interest of P.A.W.*, 716 S.W.2d 284, 289 (Mo.App.1986); *T.S. v. P.S.*, 797 S.W.2d at 843; *In Interest of M.B.*, 768 S.W.2d 95, 97 (Mo.App.1988); *In the Interest of C.B.C.*, 810 S.W.2d 671, 675 (Mo.App.1991).

The evidence here focused on W.S.M.'s adjustment outside the parental home, his lack of bonding to his natural parents and his bonding to the foster parents, the possible trauma he would suffer if he were removed from foster care, and the prospects of early integration for W.S.M. into a stable and permanent home. All of this bore directly on determining whether the termination of parental rights was in W.S.M.'s best interest. D.M.'s and W.M.'s point is without merit.

D.M. and W.M. further argue that the trial court erred in terminating their parental rights because the trial judge should have disqualified himself from presiding over the termination proceedings. They allege that the court erroneously denied its application for a change of judge pursuant to Rule 126.01 because the judge had obtained personal knowledge of disputed evidentiary facts prior to the hearing.

Rule 126.01 requires a change of judge when the judge is interested, related to a party, or otherwise disqualified under Rule 51.07, or a party files a timely application for a change of judge. An application is timely when it is filed within five days after a trial date has been set or, if a trial date has not been set, within five days of the designation of the trial judge. By local rule of the 17th Judicial Circuit, Division 1 was the juvenile division. Judge Carl Gum was the only juvenile court judge for Johnson County and the 17th Judicial Circuit.

The juvenile officer filed his petition to terminate parental rights on July 26, 1991. Authorities served W.M. with a summons on August 2, 1991, and D.M. on August 7, 1991. Both summonses informed them that the matter was scheduled for hearing on September 10, 1991. On August 9, 1991, the Johnson County juvenile office mailed a "Court Hearing Notice" to D.M.'s and W.M.'s trial counsel indicating that the hearing would be held on September 10, 1991. Hence, under Rule 126.01, the latest deadline for filing an application for change of judge was on August 14, 1991. D.M. and W.M. did not file their application until September 10, 1991, and it was, therefore, out of time.

■ D.M. and W.M. filed a second request for a change of judge on November 8, 1991. The second request alleged that the judge had presided over a criminal matter in which W.M. was the defendant. This alone is not sufficient justification to remove a judge in a proceeding to terminate parental rights. *In Interest of C.L.L.*, 776 S.W.2d 476, 477 (Mo.App.1989). The judge announced that he had no recollection of W.M. or his criminal case.

■ Alternatively, the parents contend that the trial judge should have disqualified himself because he had obtained knowledge of disputed evidentiary facts prior to the hearing. On May 22, 1990, W.S.M.'s foster parents sent the trial judge a letter describing W.S.M. as "sick, hungry and filthy" and "emotionally starved for love and attention" when he was first placed with them. They noted that W.S.M. "has become so attached to our family that leaving him for only a short time is [d]ifficult for him." The letter also noted their suitability as permanent custodians for W.S.M.

The trial judge responded with a letter to the foster parents stating that he was placing the letter in the court file for future reference when considering permanent placement of W.S.M. The parents contend that this acknowledgement indicated that "the information contained in the letter was accurate and not subject to rebuttal by the natural parents."

■ We discern no prejudice or injustice in the trial court's handling of the foster parents' letter. The letter did not convey any information to the trial court not conveyed by independent evidence at trial. Further, "not every prejudice presents legally sufficient grounds to disqualify a judge from his duty to hear a case.... 'Prejudice' that requires disqualifying a judge 'is the attitude of personal enmity towards the *party* or in favor of the adverse party to the other's detriment.'" *Jetz Service Co., Inc. v. Chamberlain*, 812 S.W.2d 946, 948–49 (Mo.App.1991) (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 651–52 (2nd Cir.1943) (emphasis in original). We see no such prejudice in this case.

■ Finally, D.M. and W.M. argue that the trial court erred in terminating parental rights because they were not afforded a fair and meaningful termination hearing due to ineffective assistance of counsel. Section 211.462.2 gives parents the right to an attorney in termination proceedings, and this right implies a right to effective assistance of counsel. *In Interest of J.C., Jr.*, 781 S.W.2d 226 (Mo.App. 1989). The test of ineffective assistance of counsel is whether counsel's performance was so deficient as to deprive the parents of a meaningful hearing. *Id.* at 228. D.M. and W.M. complain that their attorney did not call as witnesses DFS case workers in Henry County who could have provided up-to-date information about the home D.M. and W.M. had provided for their other child. The juvenile officer did call a counselor who was working in Henry County with the couple, and his testimony was favorable. He recommended that W.S.M. be reunited with D.M. and W.M. The DFS case workers who did testify were stationed in Johnson County, but they had received reports from the Henry County workers.

The record does not establish to what the Henry County case workers would have testified, but D.M. and W.M. assert in their brief that the case workers' "testimony regarding the condition of the natural parents' home would have been significant." As we noted above, D.M.'s and W.M.'s housekeeping skills were not the central issue. Central to this case was D.M.'s and W.M.'s ability to parent children. We find nothing which suggests that the uncalled case workers would have had anything pertinent to add to the record concerning that issue.

■ D.M. and W.M. also assert that their attorney was ineffective by virtue of his failing to object when a case worker testified to the contents of DFS' service agreements with D.M. and W.M. They do not contend now that the case worker's testimony was inaccurate. To the extent that the case worker's depiction was accurate, counsel's failure to object is inconsequential.

Counsel need not object to every bit of objectionable evidence to be effective. Effective trial strategy often dictates against making objections which are justified. D.M.'s and W.M.'s counsel did object to matters throughout the proceedings, and he was effective in providing evidence favorable to D.M. and W.M.—notably evidence which permitted him to argue in this appeal that many of the conditions which existed on May 10, 1989, had improved by November 1991. We do not find sufficient basis for concluding that D.M.'s and W.M.'s counsel was ineffective.

In conclusion, we conclude that grounds existed to terminate D.M.'s and W.M.'s parental rights pursuant to § 211.447.2(3). We reverse the judgment of the trial court, however, and remand with directions to enter findings regarding W.S.M.'s best interests as required by § 211.477.5.

All concur.