729 S.W.2d 194 (1987)
In the Interest of M.E.W., Jr., Juvenile.
Thomas D. CARVER, Juvenile Officer, Respondent,
v.
C.R., Appellant,
L.R.C. and P.D.C., Intervenors.
No. 68621.
Supreme Court of Missouri, En Banc.
April 14, 1987.
Rehearing Denied May 19, 1987.
*195 Petra T. Tasheff, Kansas City, for appellant.
Audrey J. Bimby, Molly H. Sammler, Legal Aid of Western Missouri, Kansas City, for respondent.
HIGGINS, Chief Justice.
The juvenile court ordered termination of C.R.'s parental rights to her son, M.E.W., Jr., born May 8, 1977.[1] The Court of Appeals, Western District, reversed the termination; this Court transferred the case to examine whether the evidence was sufficient to support the termination under section 211.447.2(2)(i)b, RSMo Supp.1984 (repealed). Affirmed.
The juvenile court acquired jurisdiction over M.E.W., Jr. on March 22, 1979, due to the injurious environment in which he resided. The juvenile officer's petition specified bruises and lacerations which evidenced physical abuse of the child. On July 5, 1979, the court ordered M.E.W., Jr. committed to the Division of Family Services for placement in foster care. Upon review, October 25, 1979, the Division was authorized to return M.E.W., Jr. to his mother and stepfather; he was removed again in December 1979 when the child was found with a three-inch patch of hair missing from his head. The pleadings noted the emotionally dangerous environment caused by marital difficulties of the mother and stepfather and the lack of a permanent residence as the basis for further action. The court continued the child in foster care subject to periodic review. In its order of August 24, 1983, the court again continued M.E.W., Jr. in the Division's custody and noted conditions that needed correction in C.R.'s household: "the marital stability of Ms. R., R.R.'s alcoholism, the recognition of the child's special needs and the necessary abilities to provide for them and the appropriateness of the living environment."
The petition for termination of C.R.'s parental rights filed June 28, 1984, alleged violations of two statutes. The petition tracked sections 211.447.2(2)(b) and 211.447.2(2)(i)b, RSMo Supp.1984 (repealed). The pleaded portion of section 211.447.2(2)(b) is the neglect provision applicable when the child is not in the parents' custody; the pleaded portion of section 211.447.2(2)(i)b provides for the termination of parental rights when the child is not in the parents' custody and the parent has failed to rectify certain negative conditions existing in the home. The trial court terminated C.R.'s parental rights under section 211.447.2(2)(i)a, which provides for termination after the intentional infliction of injury or neglect of the child while in the parents' custody, and under section 211.447.2(2)(i)b, the failure to rectify provision noted above.
The primary concern of a parental termination hearing is the best interest of the child, In Interest of J.Y., 637 S.W.2d 670 (Mo. banc 1982); and clear, cogent and convincing evidence must establish that one or more of the conditions in sections (a)-(i) exist before termination may be ordered. § 211.447.2(2). Appellate courts should give due regard to the trial court's opportunity to judge the credibility of witnesses and sustain the decree unless there *196 is no substantial evidence to support it, it is contrary to the evidence or it erroneously declares or applies the law. D.G.N. v. S.M., 691 S.W.2d 909 (Mo. banc 1985). When the trial court has received conflicting evidence, appellate courts should review the facts in the light most favorable to the trial court's order. Rule 73.01. Trenton Trust Co. v. Western Surety Co., 599 S.W.2d 481 (Mo. banc 1980); In re B.G.S., 636 S.W.2d 146 (Mo.App.1982).
The juvenile court considered the four factors contained in section 211.447.2(2)(i)b prior to terminating C.R.'s parental rights. The court of appeals did not question three of the factors: the period of time that the child had been under juvenile court's jurisdiction, the likelihood that the conditions would be rectified in the future, and the Division's efforts to help C.R. rectify the conditions. An examination of the evidence shows that these three factors have been established by clear, cogent and convincing evidence. Remaining for further consideration is whether "the parent has failed, on a continuing basis, to rectify the conditions which formed the basis of the petition filed under section 211.031, and the order entered under section 211.181." § 211.447.2(2)(i)b.
Missouri appellate courts have demonstrated some inconsistency as to conditions that may be considered under the failure to rectify provision of section 211.447.2(2)(i)b. In Interest of A.R.S., 609 S.W.2d 490 (Mo.App.1980); In Interest of R.E.M., 712 S.W.2d 398 (Mo.App.1986). Because of this inconsistency, it is understandable that in this case the court of appeals looked only to those conditions which formed the basis of the juvenile court's original jurisdiction, the physical abuse and the lack of permanent residence. Nevertheless, the failure to rectify provision also requires consideration of those conditions contained in the order for the disposition of the child. § 211.181, RSMo. The disposition orders include not only the order originally affecting custody of the child, but all subsequent orders continuing, changing or otherwise affecting the custody disposition. The trial court needs to consider existing conditions which may have arisen or were discovered after it assumed jurisdiction over the child if it is to address effectively the entire problem in the home environment. Matter of C.W.B., 578 S.W.2d 610 (Mo.App.1979).
Section 211.447, RSMo 1986, supports this reading of section 211.447.2(2)(i)b, RSMo Supp.1984 (repealed). The current statute retained the failure to rectify provision, 211.447.2(3), RSMo 1986, with the four-step inquiry from the 1984 version. The 1986 statute has clarified and expanded the conditions to be rectified section of the 1984 version apparently in response to the confusion in its interpretation. The 1986 statute requires the consideration of those "conditions which led to the assumption of jurisdiction ... or conditions of a potentially harmful nature [that] continue to exist." § 211.447.2(3), RSMo 1986. The new statute replaces the reference to section 211.181, the disposition order, with an explicit statement that harmful conditions not originally considered could form the basis of the termination.
When examined in the light most favorable to the trial court's order, the evidence shows that C.R. has not rectified the conditions described in the August 23, 1983 order. The trial transcript contains ample evidence of the mother's inability to cope with the special needs of the child. Her social worker and two therapists noted her lack of progress in this area. They also noted C.R.'s lack of parenting skills which contributes to the problem. The problem of the home environment also had not been rectified. Although C.R. had maintained an apartment at the minimum standards for more than two years, she once again uprooted her family prior to trial. C.R. testified that she had moved to New Orleans with M.E.W., Jr.'s biological father, who she had not seen in three years, in the hope of establishing a home with him. She returned to Kansas City after he left her in New Orleans. This behavior does not evidence a stable home environment, nor does it show C.R. has made any improvement over her previous nomadic pattern. The evidence clearly supports *197 the trial court's finding of the mother's failure to rectify negative conditions.
The evidence also establishes that the termination is in the best interests of the child. M.E.W., Jr. has special physical, educational and emotional needs which need extra attention. The evidence shows that the biological mother cannot adequately provide for these needs, nor will she ever be able to do so. The child has been in foster care since 1979, spending most of this period with the same foster family. The potential for harm to the child's emotional well-being increases when custody changes remove him from a stable parent-child relationship. D.G.N, 691 S.W.2d at 914. M.E.W., Jr. needs a stable and supportive home environment in which his special needs will be addressed. The evidence shows C.R. will never be able to satisfy these needs; it is in the best interests of the child to allow him to be placed with someone who can.
Two other grounds for termination were either pleaded or relied upon to terminate C.R.'s parental rights, section 211.447.2(2)(b), the general neglect provision, and section 211.447.2(2)(i)a, the intentional injury or neglect provision while the child is in the parents' custody. If any one ground for termination is supported by the evidence the termination may stand. In Interest of B.S., 710 S.W.2d 27 (Mo.App. 1986); In Interest of G.C.P., 680 S.W.2d 429 (Mo.App.1984). The two other grounds need not be discussed because the termination of C.R.'s parental rights may be sustained on the basis of the failure to rectify provision alone. § 211.447.2(2)(i)b.
The judgment of the trial court is affirmed.
All concur.
NOTES
[1] The court also terminated the parental rights of the biological father on the ground of abandonment. § 211.447.2(2)(a)b, RSMo Supp.1984 (repealed). That determination is not appealed.