In the Interest of M.B.

JUVENILE OFFICER, Respondent,

v.

S.B., Appellant.

No. WD 40046.

Missouri Court of Appeals,
Western District.

Aug. 9, 1988.

Kirk J. Goza, Shughart, Thomson & Kilroy, Kansas City, for appellant.

Leslie Piper, Juvenile Justice Center, Kansas City, for respondent.

Before CLARK, P.J., and
LOWENSTEIN and FENNER, JJ.

LOWENSTEIN, Judge.

This case represents the latest failure in a continuing family saga of poor parenting. The present victim is M.B., a three and one-half year old girl, who had a biological mother only for her first three weeks of life, and has been left for the balance of that time in foster care. Her mother, S.B., now age twenty, appeals a judicial termination of her parental rights. There has been no determination as to a father. Custody was taken from S.B. based on the juvenile officer's petition alleging the mother abandoned the child shortly after birth and could not provide or maintain a suitable home. The termination in this case was under § 211.447, which in pertinent part reads:

2. The juvenile court may terminate the rights of a parent to a child upon petition filed by the juvenile officer, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:

\* \* \* \* \* \*

(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division

or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

\* \* \* \* \* \*

The mother admits basically what the evidence and facts as found by the juvenile court show, that she has failed to perform any parental obligations. Her argument on appeal is that a failure of the Division of Family Services (DFS) to tailor or follow through on treatment plans based on her background has resulted in the termination of rights. She tells the court there is a reasonable likelihood of a change in her behavior if DFS will only make an extra effort to help her. She was subjected to abysmal treatment, and was abused and neglected as a child herself.

S.B. was herself under the jurisdiction of the juvenile court at age five. S.B. was still in foster care at age sixteen when M.B. was born. S.B. is mildly retarded and has been diagnosed as suffering from "Conduct Disorder Undersocialized Non Aggressive." The appellant's mother left her unattended where she was "severely sexually abused" by adult male neighbors. When the five year old S.B. was taken into protective custody she had gonorrhea. Her mother was an alcoholic—she never knew her father. She lived in a series of foster homes where her behavior was marked by running away and stealing. In March, 1985, M.B. was born, then on April 14th, S.B. left for the night, leaving the unfortunate youngster with M.B.'s foster mother. M.B. has never returned to her child. Her lifestyle has been one of a transient. She has never maintained a stable or permanent residence. In June, 1985, S.B. was in the Jackson County jail for burglary. She received probation which was revoked that August.

The record shows numerous efforts by DFS in the areas of vocational counseling, parenting classes, psychological help and chemical abuse training for S.B. Numerous appointments were set up for S.B. to visit her daughter. Bus tokens were given to her to facilitate a reunification, all under the auspices of three service agreements

where the mother and DFS agreed to certain efforts to reunite parent and child. Results of these efforts plus parenting classes have been an utter failure. S.B. has never provided any monetary support for M.B.

Since November, 1986, S.B. has been in a federal corrections facility for forging signatures on a social security check. M.B. now has a chance to be adopted by her foster parents. Despite S.B.'s youth, the evidence which led the trial court to believe the mother would not change, because her only successes in treatment and counseling occurred while S.B. was forced to attend classes while in jail or being formally detained under twenty-four hour supervision. She has failed to establish a home and has failed to follow through on earning the equivalent of a high school diploma.

The primary concern in a parental rights termination case is the best interest of the child test—the conditions of § 211.447 must be established by clear, cogent and convincing evidence. *In Interest of M.E.W.*, 729 S.W.2d 194, 195 (Mo. banc. 1987). Deference is given to the trial judge's determination of credibility of witnesses, and the Order and Judgment will only be overturned if there is no substantial evidence to support it, contrary to the evidence or erroneously declares or applies the law. *Id.* 195–96.

The quantum of proof necessary to terminate has been met in the case at bar. By clear, cogent and convincing evidence the court found the treatment plans reasonable and appropriate, but not complied with by the mother. It further found no reasonable likelihood of S.B. being able to rectify the conditions which caused her to lose custody. It found the mother, even with more assistance, would be unable to assume her responsibilities as a parent. It found compliance with the terms of the treatment plans had been ignored by the mother. Those terms included vocational rehabilitation, a permanent residence, parenting classes, interpersonal counseling, abiding by probation conditions, child visitation and $1 per month support payments. The court properly found no emotional ties

between mother and child and found the best interest of the child to be served by termination and adoption by the foster parents who had had the child since 1985. The court found portions of the service agreements which could not have been fulfilled during two jail stints were waived during those periods and were not used as a basis for termination. The same conditions that led to a custody change existed at trial, without having been rectified. *M.E.W.*, 729 S.W.2d at 196. In addition, the felony convictions coming since the custody order were subject to consideration. *In the Interest of R.H.S.*, 737 S.W.2d 227, 235 (Mo. App.1987). The mother's inadequacies run through this record—her mere participation in the terms of the service agreements with a promise of better behavior in the future will not suffice. *R.H.S., supra,* at 236. The record is also replete with continued efforts of DFS to reunite S.B. with M.B. and to improve her vocational and personal skills. But, S.B. "did not show the commitment" compatible with her testimony of wanting to keep and care for the child. *In re A.L.B.*, 743 S.W.2d 875, 881 (Mo.App. 1987). The "intensified support" S.B. seeks from DFS would be to no avail, and would further stretch state resources and personnel available for these situations.

This court is not unmindful of the mother's problems stemming from childhood. But, if the best interest test is not to be rendered merely a cliche, this case must be affirmed. M.B. now has a chance to have real but not biologically natural parents. The evidence here is the child does not know her mother, but has become attached to those who have provided the day to day care for her and wish her to be their own. This court is unwilling to overlook S.B.'s failure to meet her obligations as a parent. This child deserves a break and her chance for a family comes not a moment too soon. The child has a continuing, healthy and stable foster care situation and adoption offers a chance for permanency and quality attention in a family situation. The chance for harm to the child by removing her from a haven of emotional well-being should not here be taken. *D.G.N. v. S.M.*, 691 S.W.2d 909, 914 (Mo. banc 1985). While the plight

of S.B. is easily understood, and even though the real culprit here is S.B.'s mother, enough is enough, and the cycle of neglect started years ago must be broken. M.B. will no longer suffer the sins of the past. The court acknowledges the first rate effort of all counsel involved in this case. The judgment of the trial court is affirmed.

All concur.