IN re the Interest of D.D.C., and E.E.C., Minors, by JUVENILE OFFICER, Respondents,

v.

B.C., Natural Mother, Appellant.

Nos. WD 44656, WD 44657.

Missouri Court of Appeals, Western District.

Nov. 5, 1991.

Gwendolyn S. Froeschner, Columbia, for appellant.

John L. Whiteside, Columbia, for respondents.

Before BERREY, P.J., and ULRICH and HANNA, JJ.

BERREY, Judge.

The mother, B.C., appeals from an order of the trial court terminating her parental rights to her two children, D.C. and E.C. Affirmed.

The appellant raises four points on appeal. First, the trial court erred in determining the children had been abandoned pursuant to § 211.447.2(1)(b), RSMo (1986). Secondly, the trial court erred in determining the appellant failed to provide the children with adequate food, shelter and care pursuant to § 211.447.2(2)(d), RSMo (1986). Third, the trial court erred in determining the problems would continue to exist in the home and there was little chance the children could be returned to the appellant in the near future pursuant to § 211.447.3, RSMo (1986). Finally, the appellant contends it was error to terminate her parental rights because the juvenile court failed to hold a dispositional hearing as required by § 210.720, RSMo (1990).

D.C. was born August 6, 1985, and E.C. was born September 14, 1987. The natural mother is B.C. and the natural father is unknown.

On December 21, 1987, D.C. was placed in protective custody under the supervision of the Division of Family Services (DFS) and was placed in the home of his maternal grandmother. On March 21, 1988, and March 25, 1988, E.C. and D.C. respectively were made wards of the Boone County Juvenile Court and were placed in the temporary custody of their maternal grandmother.

The circumstances prompting intervention by DFS began when B.C. was pregnant with D.C. During the period of her pregnancy, health care workers from the City of Columbia Health Department visit-

ed her approximately fifteen times to offer her advice with regard to her health and prenatal care. Following the birth of D.C., B.C. continued to receive visits from a nurse who instructed her on infant care. Despite the instructions and the time committed to helping B.C., when the nurse visited the mother in the maternal grandparents' home she found it to be dirty and cluttered with trash. Additionally, on one visit she witnessed roaches crawling on D.C. while in bed. The nurse made suggestions on how to improve the sanitary conditions of the home for the baby, but the suggestions were never implemented by B.C. The nurse also testified D.C. appeared unhealthy and did not respond to smiling and eye contact. The nurse attributed these deficiencies to poor nutrition, poor stimulation, lack of interactive type play, and nights spent sleeping in his car seat or a playpen. Furthermore, it was noted that D.C. was not being fed the proper foods. B.C. did not feed D.C. the required amount of formula and was feeding him table foods such as chocolate, ice cream and mashed potatoes instead of baby food.

In October of 1987, D.C. was examined by a doctor who diagnosed him as a "failure to thrive" case. The doctor based this diagnosis on the finding that D.C. was underweight for his age and malnourished. Numerous department visits were made to B.C. to instruct her in order to alter the family dietary pattern. However, the attempts were unsuccessful. D.C. was examined by the doctor again in January, 1988. This follow-up visit showed the developmental pattern appeared the same and was still consistent with an environmental failure to thrive.

The same doctor examined E.C. in January 1988, when E.C. was four months old. The doctor determined E.C. was also suffering from an environmental failure to thrive. Both boys were evaluated by other physicians who reached a consistent diagnosis. The doctors noted, however, after the boys had spent time in foster care there were improvements in all areas.

A series of social workers from DFS were also involved in the case. One caseworker involved expressed specific concerns with the housekeeping standards in the boys' home. The caseworker additionally expressed concern with B.C.'s habit of going out a great deal and leaving the boys alone. The caseworker testified that while his assistance led to some improvement, the improved situation did not even satisfy minimal standards. Other caseworkers testified similarly.

In July of 1988, B.C. went to Texas and was married. B.C. and her husband returned to Missouri briefly in August of 1988 before moving back to Texas. B.C. did not take the children with her. According to B.C., she wanted to take the children but there was not room in the car. B.C. made only minimal attempts to contact the children from September of 1988 to July of 1989. Other than this minimal communication, she did not have any contact with the children until July, 1989. In a fifteen-month time span B.C. had only eleven visits with the children and on many occasions was gone for extended periods of time.

A petition for termination of parental rights for each child was filed on July 21, 1989. B.C.'s parental rights were terminated as to D.C. and E.C. on December 13, 1990.

In any termination of parental rights, the primary concern must be the best interests of the child. *In Interest of M.E.W.*, 729 S.W.2d 194 (Mo. banc 1987). The state must prove its case based upon clear, cogent, and convincing evidence. *D.G.N. v. S.M.*, 691 S.W.2d 909, 912 (Mo. banc 1985). The decree will be sustained unless there is no substantial evidence, to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Id.* Review is done in the light that is most favorable to the order of the trial court. *In Interest of M.L.W.*, 788 S.W.2d 759, 762 (Mo.App.1990).

Appellant first argues the state failed to prove by clear and convincing evidence that B.C. failed to support and communicate with the children during the statutory period pursuant to § 211.447.2(1)(b), RSMo

(1986). This section provides that a court can terminate on grounds of abandonment when it finds that for six months or longer a parent has without good cause: (1) left the child without any provision for parental support; and, (2) has left the child without making arrangements to visit or communicate with that child, although able to do so.

In this case, no evidence was introduced by the mother to show she made any type of financial contribution towards the support of either D.C. or E.C. The transcript clearly indicates B.C. primarily relied on her mother to provide for her children. During the time she was in Texas, she failed to send any money for her children's support. She managed to send a few letters and Christmas gifts, however, this cannot be mistaken for support. B.C. testified she did not work and received SSI. She further testified these funds were utilized to support herself rather than her children. There was no evidence presented by the appellant to indicate she is unable to obtain some type of employment. It is evident from the record B.C. failed to provide support for her children.

The other element which must be discussed under § 211.447.2(1)(b), RSMo (1986), is whether B.C. failed to visit or communicate with her children for a minimum of six months. B.C. moved to Texas and did not see her children from August 1988 to July of 1989. During this period she telephoned DFS on a few occasions to ask questions about the boys and additionally sent a few letters and presents. However, she never visited the boys during this eleven-month period. B.C. testified she wanted to take the boys with her to Texas but the car was too full of her and her husband's belongings, leaving no room for the boys. In addition to being in Texas for the eleven-month-time period, B.C. also resided outside of Boone County for a minimum of one month on at least four other occasions since July, 1989, without contacting the children. She also contributed nothing to the support of the children since DFS has been involved with the family. Even when the children were in the home with B.C., she failed to feed them properly

and failed to provide adequate shelter. There is nothing in the record to support the mother's contention of error by the trial court. B.C.'s first point of error is denied.

In B.C.'s second allegation of error she contends the trial court erred in terminating her parental rights pursuant to § 211.447.2(2)(d), RSMo (1986). This section provides that if a parent continuously fails to provide for her child both physically and emotionally when that parent is physically and financially capable of providing for the child the parental rights may be terminated.

The evidence in this case clearly shows B.C. failed to provide for the basic fundamental needs of her children. The testimony of the DFS workers indicated the home was filled with trash, dirty clothes, and old food. The house was also infested with roaches. Despite the fact the workers attempted to help and give advice with regard to sanitary conditions, the home environment did not improve. Additionally, B.C. had difficulty in determining what and how much food should be given to the boys. Both boys were diagnosed failure to thrive and were very small and underdeveloped for their age. B.C. insisted on feeding the boys table food at a very young age and would not follow the dietary recommendations of doctors, nurses, and DFS workers. The appellant's second point on appeal is denied.

In her third point, B.C. contends DFS failed to provide consistent and sufficient services to her. She maintains if there were difficulties in the family they could be attributed to the lack of services provided, rather than parenting deficiencies on the part of B.C. B.C. contends she did not receive services for up to a year prior to the time the petition for termination was filed. The trial testimony suggests B.C. received detailed services from 1985 to mid 1988. Since mid–1988, B.C. has only received supervised visitation services but no other additional services. It would seem then that B.C. did not receive services for up to a year prior to the time the petition was filed. However, a closer look at the

circumstances involved would indicate DFS could not have provided services if they had attempted to because B.C. was in Texas for the majority of 1989 and continued to travel outside of Boone County on four other occasions for at least a month at a time during the year in question. B.C. cannot complain of a lack of services if she was not available to receive them. B.C. received three years of intensive assistance, much of which she rejected. The appellant's third point on appeal is denied.

 The appellant next contends the trial court erred because it failed to make a finding under § 211.447.2, subd. 3, RSMo 1986. Specifically, B.C. suggested the court failed to make findings with regard to subparts (c) and (d). The mother contends this finding is mandated and the lack of finding constitutes reversible error. We disagree. This section of the statute specifically states the court should make findings with regard to provided factors "when appropriate and applicable to the case." § 211.447.2.(3), RSMo (1986). In the case at bar, the court did consider subparagraphs (c) and (d) and determined they were not relevant because no evidence was offered supporting either subparagraph. The statute allows for this discretion by the trial court and this court will not disturb the trial court's determination.

In her final point on appeal, B.C. contends the trial court erred in terminating her parental rights because the court failed to hold a dispositional hearing as mandated by § 210.720, RSMo (1990). A similar issue was recently addressed in *In the Interest of T.S. v. P.S.*, 797 S.W.2d 837 (Mo.App.1990). In that case this court rejected the same type of issue on appeal because the issue had not been preserved for appeal. *Id.* at 841. In the case at bar the issue of the dispositional hearing was first raised on appeal. The case law would therefore dictate the issue be rejected on appeal. It is possible, however, even though an issue was not raised or preserved, an appellate court could grant review under the plain error standard. Rule 84.13(c), RSMo (1988). The law holds that a plain error affecting substantial rights

may be considered at the discretion of the court if the court finds that manifest injustice or miscarriage of justice would result. *Id.* However, this court cannot see that any manifest injustice will occur. The evidence presented by the juvenile officer was clear and convincing in support of the termination. Appellant's last point on appeal is denied.

The greatest concern in a parental rights termination case is the best interest of the child. *In Interest of M.B.*, 768 S.W.2d 95, 97 (Mo.App.1988). In reviewing the evidence it is clear the best interests of these children will be served through termination and integration into a stable and permanent home. The trial court is affirmed.

All concur.