In the Interest of R.L.N. and B.L.N.,

Tom HOOVER, Juvenile
Officer, Respondent,

v.

Vicki Sue (Nelson) JOINER, Appellant.

No. WD 47570.

Missouri Court of Appeals,
Western District.

March 8, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 3, 1994.

Application for Transfer Sustained
June 21, 1994.

Case Retransferred Nov. 22, 1994.

Court of Appeals Opinion Readopted
Nov. 28, 1994.

Robert W. Wheeler, Keytesville, for appellant.

David A. McAllister, Pros. Atty., Chariton County, Keytesville, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and SPINDEN, JJ.

SPINDEN, Judge.

Vicki Joiner appeals the termination of her parental rights pursuant to § 211.447, RSMo Cum.Supp.1993. She claims that the court erred in terminating her parental rights because her due process rights were violated and because the state did not meet its burden of proving that her children's best interests were served by termination. We affirm the trial court's judgment.

Vicki and Richard Joiner are the divorced parents of L.N., who was born in August 1985, and B.N., who was born in September 1987. The juvenile officer of Chariton County brought a petition for the termination of their parental rights. Richard Joiner voluntarily terminated his rights. At issue is termination of Vicki Joiner's parental rights.

The court first became involved with L.N. on August 17, 1988, when she was made a ward of the court as a result of her parents' lack of supervision. Her custody was transferred to the Division of Family Services

(DFS), but the court permitted her parents to resume custody of her on September 1, 1988.

On July 17, 1989, five days after Vicki's boyfriend, Jud Eli, moved into the home, DFS again removed L.N. and B.N. from Vicki Joiner's custody on the grounds that she chronically neglected the children, that she did not supervise them, and that there were filthy living conditions in the house. B.N. was made a ward of the court, which transferred his custody to DFS. The court returned the children to their mother's custody on January 2, 1991, but, on May 22, 1991, DFS again removed the children from Vicki Joiner's custody in response to a hotline call regarding L.N.'s statements that Eli had sexually abused her.

In his petition, the juvenile officer alleged two grounds for terminating Vicki Joiner's parental rights:[1]

[T]he repeated failure of Vicki Sue [Joiner] to comply with the various Court Approved Plans constitutes neglect without good cause under the provision of Section 211.447.2.(3)(a) RSMo., and it has continued for more than one year prior to filing of this petition.

. . . .

[T]he children have been under the jurisdiction of the Juvenile Division of the Chariton County Circuit Court for one year or longer, . . . and there is reasonable cause to believe that the parents will not, even if given more time, rectify those conditions on a continuing basis, and that the Juvenile Officer and the Chariton County Division of Family Services have used reasonable, diligent, and continuing efforts to aid the parents to rectify the conditions and provide on a continuing basis a proper home for the children.

In its order terminating Vicki Joiner's parental rights, the court made extensive findings. It examined Vicki Joiner's compliance with DFS plans and found:

---

1. In his petition, the juvenile officer asked that Richard Joiner's parental rights be terminated in conjunction with Vicki Joiner's rights. Because Richard Joiner consented to the termination of his rights after the petition for termination was filed, we speak of the petition as if it asked for termination only of Vicki Joiner's rights.

After seven court approved plans and service agreements developed by [DFS], at the request of the Court, Vicki still is either unwilling or unable to provide a stable and permanent home for her children with the structure and affection required by them to meet their problems. Vicki has taken advantage of many of the services provided for her under these plans by [DFS] but has always failed to follow through with the application of what she may have learned through these services when the children were returned to her home.

The court found that DFS had exerted reasonable efforts to reunite the family, and "[t]hose efforts, though extensive, have been unsuccessful." The court said that "Vicki made some effort to participate in the services offered to her in the plans of reunification, but she has continued on a cycle of interest and disinterest[.]" It found that "Vicki has not taken the basic step toward adjusting her circumstances or conduct to ultimately provide a proper home for her children." The trial court found that Vicki Joiner "emotionally abused [L.N.] by refusing to accept responsibility for her duties of supervision and instead blamed and cursed her three year old daughter for being at fault." Finding that "[a]dditional services will not likely bring lasting parental adjustment required to return the children to Vicki within an ascernable time period[,]" the court decided that termination of Vicki Joiner's parental rights was in the children's best interests.

A court should terminate parental rights only when it is in the best interests of the child and substantiated by clear, cogent, and convincing evidence of one of the statutory factors allowing termination. *In the Interest of M.E.W.*, 729 S.W.2d 194, 195 (Mo. banc 1987). If "the evidence instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true[,]" then the standard is met. *In the Interest of C.K.G.*, 827 S.W.2d 760, 765 (Mo.App.1992). We must sustain the trial court's judgment if it is supported by substantial evidence and correctly applies the law. *M.E.W.*, 729 S.W.2d at 195–96.

Section 211.447, RSMo Cum.Supp.1993, sets forth the grounds upon which a court can terminate parental rights. The trial court cited § 211.447.2(2)(c) and (3)(a)-(b) in its decision.

Vicki Joiner argues that her due process rights have been violated because "the cause of the initial detention was different than the final termination[.]" This argument has merit in so far as it complains that the juvenile officer's petition for termination of parental rights did not recite facts sufficient to support termination under § 211.447.2(2)(c). Due process requires that "[t]he petition in a termination of parental rights case ... contain allegations likely to inform those persons involved of the charges to the end that objection may be prepared." *In the Interest of D.M.J.*, 683 S.W.2d 313, 314 (Mo.App.1984). In its petition the juvenile officer listed § 211.447.2(2)(c) as one of the sections supporting termination of Vicki Joiner's parental rights, but, because the juvenile officer did not recite any allegations of sexual abuse to support termination under this section, the trial court erred in relying on the sexual abuse of L.N. and Vicki Joiner's behavior regarding that abuse in terminating Vicki Joiner's parental rights. However, because we find that § 211.447.2(3) supports termination of Vicki Joiner's parental rights, we do not discern any prejudice to her. We will affirm the trial court's judgment if the evidence supports *any* statutory grounds. *M.E.W.*, 729 S.W.2d at 197.

Section 211.447.2(3) says:

The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, ... if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:

. . . .

(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of

jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child[.]

■ The evidence clearly supports termination under § 211.447.2(3). The children had been under the juvenile court's jurisdiction for more than one year, so the statute authorized the court to terminate Vicki Joiner's parental rights if it found that harmful conditions persisted with "little likelihood" that she would remedy them in the near future. The court considered both Vicki Joiner's lack of adherence to DFS plans and DFS' inability to aid her in preparing a suitable home for her children. Vicki Joiner violated six service plans.[2] Although she seemed to understand parenting techniques, she did not use them. She seemed disinterested in being a mother and allowed Eli to take the active parental role. The unani-mous opinion of the DFS workers was that their services could no longer be of a benefit and that Vicki Joiner continues to be unable to provide a proper home for her children.

■ Vicki Joiner argues that her due process rights were violated because the state acted contrary to the mandate of § 211.011, RSMo 1986. That statute says:

The purpose of this chapter is to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court. This chapter shall be liberally construed, therefore, to the end that each child coming within the jurisdiction of the juvenile court shall receive such care, guidance and control, *preferably in his own home*, as will conduce to the child's welfare and the best interests of the state and that when such child is removed from the control of his parents the court shall secure for him care as nearly as possible equivalent to that which should have been given him by them.[3]

This statute, she argues, places on the state an "absolute ... burden to keep the children in the home." We disagree. This statute states a *preference* for keeping a child in the home, but it declares that the overriding goal of Chapter 211 is to attain the best interests of the child. Unfortunately, the child's best interests sometimes require that he or she be removed from the home.

Vicki Joiner argues that the children should have been returned to her when Jud Eli moved out of her home. We disagree. Eli's presence and the sexual abuse allegations were not the only factors leading to termination of Vicki Joiner's parental rights. That Eli no longer lived in the house was a

---

2. DFS provided the trial court with a list entitled "Items Not Complied With On the Court Approved Plans/Written Service Agreements." It alleged that she violated Plan No. 1 by "continu[ing] to make excuses why they were unable to attend the scheduled evaluations ... [and] continu[ing] to yell and curse at the children[.]" There was a substantiated hotline in December for poor hygiene ... and unsanitary living conditions." It said she violated Plan No. 2 because "[t]here were two substantiated hotlines (one in May and one in ... June) for lack of supervision and untreated illness/injury." DFS alleged that she violated Plan No. 3 by not completing a substance abuse evaluation. It said that she violated Plan No. 4 by "continu[ing] to lack the appropriate parenting skills" and by not submitting any written plans to DFS. It accused her of violating Plan No. 5 because of her continued "yelling, physical aggression and inappropriate language ... toward the children[.]" It accused her of violating Plan No. 7 by "not demonstrat[ing] appropriate and consistent ... parenting skills ... evident due to the removal ... of the children in May 1991."

3. We added the emphasis.

positive step, but it did not resolve Vicki Joiner's behavioral problems.

Vicki Joiner argues that the service plans denied her due process rights because they were unworkable and contradictory. We see nothing which indicates these plans were unworkable or contradictory. Compliance with a service plan is only one factor to consider when determining whether the potentially harmful nature of the parental home is likely to change soon enough to prevent terminating parental rights. *See In the Interest of J.K.C.*, 841 S.W.2d 198, 202 (Mo. App.1992).

She finally claims that her due process rights were violated "in that the children were returned to the home when DFS had prior knowledge of the possible sexual abuse and still allowed the children to be placed in the same home with the perpetrator." She contends that DFS should have "required Jud Eli to move out" before they returned the children to the home. We fail to discern arbitrary and capricious action by DFS. It believed that it had achieved all that it could because of Vicki's failure—or disinterest—in implementing the necessary parenting behaviors. Recognizing the desire to have the children in the home when possible (a goal that serves as the basis for one of Vicki's own arguments), DFS agreed to return the children in January 1991 with hope that the family could be reunited. It learned its hopes were baseless. Nothing in evidence supports Vicki Joiner's allegation that DFS "sabotaged Vicki's attempts to reunify the family."

Some evidence shows a bond of some sort between Vicki Joiner and her children. She testified that she had improved her parenting skills through counseling, but the trial court found that the evidence supporting that assertion was insufficient to countervail the abundant evidence supporting termination. "As the trier of fact, the trial court has leave to believe or disbelieve all, part or none of the testimony of any witness." *C.K.G.*, 827 S.W.2d at 765. We find no reason to disagree with the trial court's conclusion that the best interests of the children are served by terminating their mother's parental rights.

We find, therefore, that § 211.447.2 supports termination of Vicki Joiner's parental rights. We affirm the trial court's judgment.

All concur.