**In the Interest of L.V.M.**
**C.C.C.S., Appellant.**

**No. 21174.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 17, 1998.

William J. Fleischaker, Roberts, Fleischaker, Williams, Wilson & Powell, Joplin, for appellant.

Wendy E. Garrison, Asst. Pros. Atty., Neosho, for Juvenile Officer.

Roya R. Hough, Jefferson City, for Dept. of Social Service.

M. Roger Carlin, Evenson, Carlin & Lepage, Pineville, for Guardian Ad Litem.

PARRISH, Presiding Judge.

C.C.C.S. appeals a judgment terminating his parental rights to L.V.M. This court affirms.

The record on appeal includes a legal file and transcript of testimony from the trial of the termination of parental rights case, and a transcript of the testimony from two earlier hearings in L.V.M.'s juvenile case. The original juvenile hearings were held July 26, 1989, and September 26, 1989. The July 26 hearing involved the removal of L.V.M. and his sibling, A.M.M., by the juvenile officer for Newton and McDonald Counties from appellant's home. The juvenile officer had taken the children into protective custody following investigation of allegations that the female child, A.M.M., had been a victim of ongoing sexual abuse by appellant.

The September 26 hearing was the trial on a petition that alleged L.V.M. (then age 6) and A.M.M. (then age 14) were within Newton County, Missouri, and were in need of care and treatment because their parents, or the persons legally responsible for their care and support, had neglected or refused to provide care and support. It alleged that A.M.M. had been a repeated victim of sexual abuse perpetrated by the alleged father of the children, C.C.C.S. (appellant herein); that she, as well as other children, had been the subject of sexually oriented photographs taken by appellant or by A.M.[1]

The petition alleged that the two children were "illegally obtained" and brought into the United States with the aid of falsified documents. It alleged that appellant and A.M. filed false affidavits with the Missouri Department of Health in order to obtain falsified certificates of live birth for the children.

The juvenile court found it had jurisdiction over the children, that they were present within Newton County, neglected, and in need of care and treatment. It found that appellant was confined in the Newton County Jail in lieu of bond on pending criminal charges; that there was no relative placement available for either child. The children were placed in the care and custody of the Missouri Division of Family Services (DFS). The order placing the children in foster care was dated September 26, 1989. It was filed September 27, 1989.[2]

Appellant subsequently pleaded guilty in the United States District Court for the Western District of Missouri to possession of firearms, as a convicted felon[3], in violation of 18 U.S.C. § 922(g)(1), and interstate transportation of material involving sexual exploitation of a minor, in violation of "18 U.S.C. § 2551(a)."[4] The sentence appellant received does not appear in the record on appeal; however, exhibits were admitted in evidence that state he was released from federal prison February 9, 1995.

A petition to terminate appellant's parental rights as to L.V.M. was filed June 22, 1992. A second amended petition was filed September 5, 1995. Trial was held January 30, 1996. At the conclusion of the evidence, the case was taken under advisement to permit the parties to file trial briefs. Judgment terminating appellant's parental rights was filed July 30, 1996.

1. A.M. was appellant's wife. She should not be confused with A.M.M., the sibling of L.V.M.

2. The legal file which appellant filed did not include a copy of the order that was entered at the conclusion of the original juvenile court hearings. This court, as permitted by Rule 81.12(e), ordered the clerk of the trial court to provide a certified copy of that document. A certified copy was received and is included in this court's file as a supplemental record.

3. Appellant stipulated in a plea bargain agreement filed in the U.S. District Court for the

Western District of Missouri that he had prior felony convictions that included a conviction on November 16, 1951, in the United States District Court for the Northern District of Oklahoma, of interstate transportation of a stolen motor vehicle; a conviction on September 18, 1953, in the District Court of Tulsa County, Oklahoma, of second degree burglary; and a conviction on September 26, 1955, in the Circuit Court of Newton County, Missouri, of grand larceny.

4. There are several references in the record on appeal filed in this court to 18 U.S.C. § 2551(a).

■ "The primary concern of a parental termination hearing is the best interest of the child." *In Interest of M.E.W.*, 729 S.W.2d 194, 195 (Mo. banc 1987). However, in order to terminate parental rights it must also be shown by clear, cogent and convincing evidence that one or more of the conditions in § 211.447.2(1)-(3)[5] exist.[6] In its review, this court gives due regard to the trial court's opportunity to judge the credibility of the witnesses. *M.E.W., supra.* The judgment will be affirmed unless there is no substantial evidence to support it, it is contrary to the evidence or it erroneously declares or applies the law. *Id.* at 195–96.

■ One of the grounds the trial court found for terminating parental rights was appellant's failure to rectify circumstances that led to the removal of L.V.M. from appellant's home. Section 211.447.2(3) provides for termination of parental rights when:

The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

Both harmful conditions that existed at the time the juvenile court assumed jurisdiction of L.V.M. and current conditions are subject to review. *M.E.W., supra,* at 196. This court judicially notices the testimony from the juvenile hearings held July 26, 1989, and September 26, 1989.

The allegation of error set out in Point III of appellant's brief is directed to the juvenile court's termination of parental rights on the basis of appellant's failure to rectify circumstances that led to the juvenile court's assumption of jurisdiction over L.V.M. Appellant contends the trial court's finding that he failed to rectify those circumstances was erroneous; that the finding was not supported by substantial evidence or was against the weight of the evidence because "the court never specifically stated what conditions of a potentially harmful nature continued to exist and there was no evidence that there was any potential threat that [appellant] would abuse [L.V.M.] and the only potentially harmful condition that existed was [L.V.M.'s] fear that he would be required to leave his foster home and there was no showing that given a[sic] opportunity to participate in family therapy with [appellant] that [L.V.M.'s] fear could not be resolved."

The judgment terminating appellant's parental rights includes the finding:

[T]he minor has been under the jurisdiction of the juvenile court for a period of at least one year, i.e. since September 26, 1989, and that conditions of a potentially harmful nature exist such that the minor cannot be returned to the custody of the natural father in that there has been no evidence presented which would support a finding that the natural father acknowledges his role in the placement of the minor in care. More importantly, there was no evidence presented to support a finding that the natural father has addressed the issue of his sexual abuse of the minor's sibling [A.M.M.] through any type of psychiatric or psychological treatment or counseling. There is also evidence that these conditions cannot be remedied at an early date to allow a return of the minor to the natural father's care.

Appellant was in jail when the juvenile court originally took custody of L.V.M. The order by which the court made L.V.M. its ward recites appellant was "charged in the Circuit Court of Newton County by information alleging three counts of violations of the criminal laws of this state;" that he was "confined . . . in lieu of bond."

---

Query: Should the reference be to 18 U.S.C. § 2251(a)?

5. References to statutes are to RSMo 1994 unless stated otherwise.

6. § 211.447.2 was amended in 1997 by H.B. 115 to include additional grounds for terminating parental rights. *See* § 211.447.2(4)-(6), RSMo Supp.1997. That amendment was effective August 28, 1997, after this case was tried.

There was testimony in the July 26, 1989, juvenile court hearing about events that led to taking L.V.M. (and A.M.M.) into custody. The Newton County juvenile officer told the court:

There were also a lot of other issues raised during this investigation, including [A.M.M.] being the subject of sexually oriented photographs. Some of those photographs are now in the custody of the Sheriff's department, in evidence. There's also information leading to believe that both [A.M.M.] and [L.V.M.] are possibly not American citizens, that they were brought to the United States illegally with the aid of false documents that were secured by [appellant] and [A.M.]

The juvenile officer was represented by the prosecuting attorney of Newton County at the September 26, 1989, hearing. He told the trial court, with respect to the criminal charges then pending against appellant, "The docket entry shows that he was bound over for trial this morning to Division I on three counts of rape, statutory rape, and in the alternative forcible rape."

In addition to defendant being charged with sexual offenses alleged to have been committed in Newton County, there was testimony from appellant's wife, A.M., that she had observed appellant committing acts of a sexual nature with A.M.M. At the time of the September 26, 1989, hearing, A.M.M. was "12 years old, going on 13."

A.M. testified that on an occasion before coming to Missouri, when they lived in California, she saw A.M.M. sitting on a counter facing appellant; that appellant had his penis outside his clothing; that it was erect and he was "going against her." A.M. testified that after this occurred, appellant "took off for seven months almost." When appellant returned he told his wife he wanted to go to Missouri to be close to his family.

There was evidence of additional sexual abuse of A.M.M. by appellant. A.M. was asked how it was that, after she saw the incident of abuse of A.M.M. in California, she did not prevent further acts from occurring. She answered, "I wasn't aware that it was happening again, because he had promised before we moved down here that he would

never ever in his life ever lay hands on this girl again."

The record is not clear as to the ultimate disposition of the 1989 Newton County criminal charges. However, during the same general time period, appellant had charges pending against him in the U.S. District Court. According to the written plea bargain agreement from the federal court, a copy of which was admitted in evidence in this proceeding, appellant was charged in a five-count indictment in that court. The date stamp on the copy of the plea bargain agreement reflects its filing in the U.S. District Court for the Western District of Missouri on June 22, 1990. The agreement is signed by an Assistant U.S. Attorney on behalf of the government, and by appellant, as the defendant in the case, and his attorney.

The plea bargain agreement provided that appellant would plead guilty to two of the five counts; that upon his being sentenced for those offenses, the government would dismiss the remaining counts of the indictment. The offenses to which appellant agreed to plead guilty were "possession, as a convicted felon, of firearms, in violation of Title 18, United States Code, Section 922(g)(1)," (Count One), see n. 3, supra, and "interstate transportation of material involving sexual exploitation of a minor, in violation of Title 18, United States Code, Section 2551(a)"[7] (Count Five).

Part of the plea bargain agreement was a stipulation of facts that the parties agreed "represent accurately, and reflect, a factual basis for the charges to which [appellant] will plead guilty, and that such facts are readily provable. . . ." The stipulated facts include:

On July 19, 1989, following a complaint to the Newton County, Missouri, juvenile office, the Newton County Sheriff's office searched the [appellant's] residence and adjacent outbuildings in Neosho. The search was through the written consent of [appellant's] wife, and followed her statement that the shed adjacent to their residence contained firearms and pornographic materials involving minors, all of which belonged to [appellant].

7. See n. 4, supra.

The search by county authorities resulted in the discovery, in [appellant's] separate bedroom, of a .22 rifle and a .25 handgun, both of which [appellant's] wife identified as belonging to [appellant]. Other firearms, including two handguns and a shotgun, were discovered in the shed, and also were identified by [appellant's] wife as belonging to [appellant]. Moreover, an ATF firearms expert would testify that all of those firearms were manufactured outside the State of Missouri. Such firearms are the collective subject of *Count One.*

Also found during the search were four (4) color photos of Lisa Mendoza. The photos, which are the collective subject of *Count Five,* were found in a locked metal box bearing the name "STAN" on the lid. Inside the box were documents bearing [appellant's] name, as well as other items associated to [appellant].

The four color photos show four different nude poses of Lisa Mendoza and graphically depict her genitals and pubic area. Lisa Mendoza has stated, and would testify, that [appellant] took those photos and that, at the time the photos were taken by [appellant], she was in the back portion of a family van in San Jose, California. . . . [Appellant's] wife would testify that the locked metal box bearing the name "STAN" and in which the photos were found was the [appellant's]. She would testify further that the metal box was in their San Jose residence prior to [appellant] moving all their furnishings and possessions to Missouri. Lisa Mendoza has stated, and would testify, that she was fifteen (15) years old at the time [appellant] took those four photos.

The plea bargain agreement included the statement that appellant had read the agreement, understood it, and by his signature, stated it was true and accurate.

Photographs identified as depicting Lisa Mendoza (L.V.M.'s mother) were introduced in evidence as the photographs to which the plea bargain agreement refers. The description in the plea bargain agreement describing what the pictures depict is accurate.

Also introduced in evidence were three photographs identified as depicting A.M.M. She was nude when photographed. The pose she assumed graphically depicted her genitals and pubic area. Appellant admitted having nude pictures of A.M.M. when he testified at the 1989 juvenile court hearing but denied having taken the pictures.[8]

When appellant was released from prison in 1995, visitations with L.V.M. were arranged. The visitations were supervised. They were conducted in the presence of a DFS representative and members of appellant's family. The visits were not successful. L.V.M. did not relate to appellant and resisted having to visit him. L.V.M. expressed the desire to remain with the persons in whose care he had been while appellant was in prison. He resisted anything that threatened his return to appellant's custody. L.V.M. expressed the desire to be adopted. His foster parents desired to adopt him.

In its attempt to return L.V.M. to appellant, DFS presented a plan that included counseling and the requirement that appellant attend and successfully complete a sexual offenders treatment program. Appellant refused to acknowledge the inappropriateness of his conduct in having sexual relations with L.V.M.'s mother at the time she was 15 years old and in maintaining the sexually explicit photographs of her and of A.M.M. He refused to comply with the request that he receive treatment related to his conduct.

Appellant's adamant refusal to cooperate with DFS in obtaining treatment as a sexual offender, together with the fact that no emotional ties consistent with a parent-child relationship were shown to exist between L.V.M. and appellant, provided substantial evidence

8. After the pictures were identified at trial, appellant objected to their admission in evidence, apparently on the grounds of relevancy, asserting there was "no connection drawn between those pictures and [appellant]." Appellant includes a challenge to the admissibility of those photographs with respect to his allegation of trial court error in Point I. The issues raised with respect to Point I are not part of appellant's claim of error in Point III. Appellant's complaint in Point I is directed to a claim that there was no admissible evidence that he took the photographs of A.M.M. The question of who took the photographs has no bearing on Point III.

from which the juvenile court could conclude it was in L.V.M.'s best interests for parental rights to be terminated; that conditions of a potentially harmful nature continue to exist that demonstrated little likelihood of being remedied at an early date so that L.V.M. could be returned to appellant.

The juvenile court's findings sufficiently identify the potentially harmful conditions that continue to exist. Appellant refused to participate in treatment designed to address those conditions. Under those circumstances, there was no evidence that the conditions could be remedied within any foreseeable time that would permit L.V.M. to be returned to appellant. Point III is denied.

■ Other grounds for terminating parental rights were pleaded and found to exist. Appellant has challenged all grounds the juvenile court found to exist. However, the juvenile court's findings with respect to the other grounds need not be addressed. Termination of parental rights will be affirmed upon any statutory grounds upheld on appeal. Termination of parental rights may be affirmed on the basis of § 211.447.2(3) alone. *M.E.W.*, 729 S.W.2d at 197. The judgment terminating parental rights is affirmed.

MONTGOMERY, C.J., and BARNEY, J., concur.