**In the Interest of C.D. and W.H., Plaintiffs.**

**Winston Rutledge, Director of Juvenile Courts, State of Missouri Department of Social Services, Division of Family Services, Respondents,**

v.

**C.S. (Mother), Appellant,**

**D.H. (Father), Defendant.**

**No. WD 57819.**

Missouri Court of Appeals, Western District.

Sept. 26, 2000.

Grant Whitlow Smith, Linn, for appellant.

Amy Woods, Jefferson City, for respondent Division of Family Services.

Jeanne M. Gordon, Jefferson City, for respondent Juvenile Officer.

Before Presiding Judge HAROLD L. LOWENSTEIN, Judge LAURA DENVIR STITH and Judge THOMAS H. NEWTON.

LAURA DENVIR STITH, Judge.

The Juvenile Officer filed a Petition to terminate the parental rights of C.S. (Mother) and D.H. (Father) to two of their children, C.D. and W.H. The Circuit Court of Cole County found the statutory grounds for termination of Mother's parental rights to C.D. and W.H. were met, but held that, in lieu of terminating her parental rights, it was in the best interests of the children to instead deny the Petition and appoint guardians for the children. Only Mother appeals this judgment. She argues that the court below erred in so ruling because it failed to timely appoint a guardian ad litem to represent her interests. Because she failed to raise this issue below, and because she has failed to show any prejudice resulted from the fact that the court did not appoint her counsel as guardian until the day of trial, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 1998, the Juvenile Officer asked the Cole County Circuit Court to take jurisdiction over Mother's minor children, including C.D., then 12 years old, and W.H., then 11 years old. The court granted the Petition and took jurisdiction over the children. At the request of the Division of Family Services (DFS), C.D. and W.H. were placed in Mother's care, subject to supervision by DFS and a 30-day permanent placement treatment plan.

Four months later, on June 19, 1998, the Juvenile Officer filed a Motion to Modify Previous Order of Disposition, on the ground that personnel at Children's Mercy Hospital had reported on June 18, 1998, that C.D. had numerous fingerprint bruises on his chest and that C.D. had indicated that Larry Summers, Mother's new husband, caused these bruises. The court entered an order of protective custody removing C.D. from Mother's physical custody. On June 23, 1998, the court appointed Grant Smith as counsel for Mother. He represented Mother over the ensuing months, during which time C.D. was again placed in Mother's physical custody.

C.D. was again removed from Mother's custody on September 18, 1998, after a review hearing revealed the following: that chaotic and unstable conditions existed in Mother's home; that Mother failed to provide a structured environment; and that Mother continued to permit the children to have contact with Larry Summers,

Mother's allegedly abusive new husband. More specifically, the hearing showed that Mother was manifesting suicidal ideations; that she let the children go to bed when they pleased; that she did not feed the children at regular times; and that as a result of her difficulty in managing money, she had not made payments on her home in several months. On September 29, 1998, the court found that C.D.'s removal from Mother's home was in the children's best interests, and further found that Mother was in need of a mental evaluation.

Mother, still represented by Mr. Smith, was subsequently evaluated by various psychologists. They found that Mother's overall functioning fell in the "mentally retarded" range, and that she was prone to both extreme anger and extreme depression. One of the psychologists, Dr. James Nolen, expressed the opinion that Mother's mental conditions were of a chronic and persistent nature, that they were not likely to be reversible, and that he did not believe that further social or psychological services would assist her in providing a safe home environment for her children. He further noted that Mother's score on the Global Assessment of Functioning test was one of the lowest scores he had seen by an individual who was not institutionalized. The Juvenile Officer thereafter filed an amended petition alleging that Mother was incompetent and lacked the necessary skills to provide appropriate parenting.

On August 10, 1999, the Juvenile Officer filed a petition seeking termination of Mother's parental rights as to both C.D. and W.H. He alleged that termination was appropriate because there were few emotional ties between Mother and the children, and that additional Family Court services would not bring about a lasting parental adjustment enabling the return of the children to Mother within an ascertainable time.

When the case came on for trial on September 2, 1999, Mr. Smith had been counsel for Mother for over one year. Before trial began that day, the court also appointed him as Mother's guardian ad litem. Mr. Smith made no objection to this appointment as guardian, nor did he request a continuance so that he could undertake additional preparation before taking on this new role, and the trial took place as scheduled with Mr. Smith acting in the dual role of counsel and guardian ad litem for Mother.

On September 14, 1999, the court ruled that sufficient grounds existed to terminate Mother's parental rights on two of the three alternative bases set out in Section 211.447 RSMo Cum.Supp.1999. In particular, the court found that Mother has a permanent mental condition; that there is no reasonable likelihood that it can be reversed; and that this condition renders her unable to knowingly provide the children with necessary care, custody and control, in that she is a "severely intellectually, psychologically, socially and occupationally impaired person." The court found that she had not improved as a parent despite home visits, counseling, and numerous other services provided her by DFS, and that she would not improve further over time.

The court also found that Mother had continuously failed to provide the children with adequate food, clothing, shelter or education, although physically and financially able to do so; that she had failed to protect the children from physical abuse by their step-father; that she was unable to keep them clean or provide adequate food or clothing for them; and that they had fallen behind in development while in her care. The court further found that the children had been under the jurisdiction of the court for more than one year, that the conditions which led it to take jurisdiction over them continued to exist, that there was little likelihood that these conditions would be remedied in the near future, and that the continuation of the parent-child relationship greatly diminished their prospects for early integration into a stable home.

The court made additional factual findings supporting these legal determinations, and, based on its findings, concluded that the alternative statutory bases for terminating parental rights set out in Section 211.447.4(2) and (3) had been satisfied. The court nonetheless ultimately determined not to terminate Mother's parental rights, because it found that it was in the best interests of the children to continue the parent-child relationship. But, in light of Mother's limited mental functioning and limited parenting abilities, and because the children had been abandoned by their natural father, the court also found that both parents were unable or unfit to assume the duties of guardianship of their children, and appointed a guardian for each of the children under the provisions of Chapter 475 RSMo 1999.

The Juvenile Officer does not appeal the decision not to terminate Mother's parental rights, but Mother appeals the court's decision to appoint guardians for her children.

## II. THE TRIAL COURT DID NOT COMMIT REVERSIBLE ERROR IN APPOINTING COUNSEL AS MOTHER'S GUARDIAN AD LITEM ON THE DAY OF TRIAL

█ On appeal, Mother does not directly contest that the evidence supported the court's ruling below that the requirements for termination of her parental rights were met, nor does she contest that, based on the record, it was in the best interests of the children to deny the petition to terminate her parental rights. Her Point Relied On states, rather, that:

The trial court erred in appointing guardians for the minor children in that the court failed to appoint the appellant a guardian ad litem until the day of trial because said appointment of a guardian ad litem is required by Missouri law and

the failure to so appoint a guardian ad litem is reversible error.

The second part of the Point indicates that Mother believes that the court below's error was in failing to appoint a guardian at all. While Mother is, of course, correct that Section 211.462.2 requires the appointment of a guardian ad litem for an incompetent or minor parent, as well as for a child, the court below did appoint a guardian for her, albeit it did so on the day of trial.[1] To the extent that Mother argues that the court erred in failing to appoint a guardian ad litem at all, we reject the argument.

█ The first clause of the Point suggests that the court's error was in waiting until the day of trial to appoint counsel as guardian ad litem for Mother. Mother raises this issue for the first time on appeal. At trial, when the court indicated at the start of the hearing that it intended to appoint Mother's counsel (Mr. Smith) as her guardian ad litem also, counsel neither objected, requested a continuance, nor indicated in any fashion that he was unprepared to act in the role of guardian ad litem. Mother thereby failed to preserve for review any error by the court in waiting until the day of trial to appoint a guardian ad litem for her. *See Elfrink v. Burlington Northern R. Co.*, 845 S.W.2d 607, 613 (Mo.App. E.D.1992) (claims are not preserved for review when no objection is made at trial). We nonetheless exercise our discretion to review for plain error.. We will find plain error only where it appears on the face of the record that the error alleged so substantially affected Mother's rights that it resulted in manifest injustice or miscarriage of justice. Rule 84.13(c). *In Interest of D.D.C. & E.E.C. v. B.C.*, 817 S.W.2d 940, 944 (Mo.App. W.D. 1991).

---

1. That Section states, in relevant part:
   When the parent is a minor or incompetent the court shall appoint a guardian ad litem to represent such parent.

Sec. 211.462.2 RSMo 1994. *See also In Re M___*, 393 S.W.2d 109, 116–117 (Mo.App. 1965) (recognizing right of incompetent parent to guardian ad litem.)

■ Manifest injustice did not result here from the trial court's delay in appointing a guardian ad litem. While it would have been preferable to appoint a guardian ad litem for Mother once her mental examination had shown her not to be fully competent, rather than waiting to do so until the day of trial, Mother cites us to no case or principle which requires us to hold that it is automatically reversible error to wait until the day of trial to appoint a guardian ad litem. Whether this constitutes reversible error would necessarily depend on whether prejudice resulted from the timing of the appointment.

In this case, there is no evidence of prejudice. The person the court appointed, Mr. Smith, had been counsel for Mother since her children came under the juvenile court's jurisdiction a year earlier. He was intimately familiar with the facts of the case, was ready to proceed to trial, and, as noted, gave no indication to the court that he was not then prepared to represent Mother as guardian ad litem as well.

Even on appeal, Mother does not contend that counsel did not adequately represent her as guardian at trial. The sole basis of prejudice she alleges is that, if a guardian had been appointed before trial, the guardian *might* have required Mother to attend treatment or program options which counsel had not considered, or which counsel had no power to require Mother to attend, and that these *might* have benefited Mother. Although counsel does not elaborate on this argument, we presume he intends to suggest that such additional treatment might have improved her parenting abilities, and so improved her chances of being found to be a fit guardian for her children. This reasoning is pure speculation, however, and we will not reverse a judgment based solely on speculation. *See In Interest of J.I.W.*, 695 S.W.2d 513, 518 (Mo.App. W.D.1985).

Moreover, a review of the record fails to support even this speculative claim of prejudice. The court clearly stated that it was directing the appointment of guardians for the children, not because Mother failed to undergo further counseling or because she failed to enter into additional programs, but because her mental disabilities were of a chronic and persistent nature and were permanent rather than reversible in nature. A treating psychologist testified that he did not believe additional social or psychological services would improve Mother's mental condition to a level which would allow her to provide a safe home environment for her children. The lower court explicitly adopted the substance of this testimony into its findings. Thus, while it would clearly be better practice to appoint a guardian ad litem earlier in the court process, the record refutes any claim that prejudice occurred in this particular case as a result of the fact that a guardian ad litem was not appointed for Mother until the day of trial.

■ Although Mother does not claim in her Point Relied On that the court below erred in appointing counsel as the guardian ad litem, in the argument portion of her brief she appears to argue that it is error for the court to require the attorney to, in effect, wear two hats: one as attorney, and one as guardian ad litem. As this issue was not properly raised, we review for plain error only, Rule 84.13(c), and find none.

It is true that the ultimate goal of an attorney in representing a client is somewhat different than the ultimate goal of a guardian ad litem in representing a ward, in that the goal of the attorney is to protect the legal interests of his or her client, whereas the goal of the guardian is to protect the best interests of his or her ward. If, in a particular case, an attorney can show that these two goals are inconsistent, because the litigant's legal interests and best interests diverge, then it would be error to appoint the litigant's attorney to also act as guardian ad litem. We held in *In Interest of J.I.W.*, 695 S.W.2d at 518, however, that there is no inherent conflict in the two roles, and that a litigant must

offer some evidence of an actual conflict between the two roles in the particular case in order to successfully allege error in such a dual appointment, for:

> The duties of [an] appointed guardian are to take all necessary steps to promote and protect the ward in the litigation.... The assertion of a need to have a separate attorney for the mother, when she already had a guardian lacks any merit.... The guardian on appeal argues his dual position may have caused a potential conflict. This speculation does not serve as the basis to reverse.... There is nothing inherently improper for a guardian who is a lawyer to also act as counsel.

*Id.* Several other cases also implicitly recognize the absence of any inherent conflict in the roles of guardian ad litem and attorney. *See, e.g., Ragan v. Looney,* 377 S.W.2d 273, 276 (Mo.1964); *In Interest of J.M.B.,* 939 S.W.2d 53, 55–56 (Mo.App. E.D.1997) (while court found that counsel was ineffective for several reasons and discussed his conduct as guardian ad litem, it did not note any inherent conflict in counsel serving both as attorney and guardian ad litem for the ward). There has been no showing of an actual conflict here.

For all of the reasons set out above, we affirm.

Presiding Judge HAROLD L. LOWENSTEIN and Judge THOMAS H. NEWTON, concur.